MUMAUGH v DIAMOND LAKE AREA CABLE TV COMPANY

Docket No. 112860. Submitted January 9, 1990, at Grand Rapids. Decided May 7, 1990.

Gordon and Marian Mumaugh, individually and as trustees for John Mumaugh and Vicary Mumaugh, and David Squires, individually and as trustee of the David E. Squires Irrevocable Living Trust, brought an action in Cass Circuit Court against Diamond Lake Area Cable TV Company for trespass and unjust enrichment. It is undisputed that defendant, after first having entered into an agreement with Indiana and Michigan Electric Company to use its utility poles, strung its cable across the property owned by plaintiffs on the poles owned by the electric utility which were sitting on an easement granted by plaintiffs' predecessors in title to the utility. Defendant moved for summary disposition on the basis that, by federal law, it was entitled to use the easement which had been granted to the electric utility company. The trial court, Michael E. Dodge, J., granted the motion, finding that federal law allowed a cable franchisee to use a privately granted easement which had been dedicated for a compatible use and that the easement in question had been dedicated to a compatible use within the meaning of that term as used in the federal act. Plaintiff appealed.

The Court of Appeals *held:*

1. The federal Cable Communications Policy Act of 1984 grants to a cable franchisee the right to use an easement which was privately granted to a public utility where the easement was dedicated for a compatible use, provided that the use of the easement by the cable franchisee does not adversely affect the safety, functioning and appearance of the property or the safety and convenience of other persons and the cable franchisee compensates the owner of the property for any damages caused by the installation or operation of the cable facilities.

REFERENCES

Am Jur 2d, Easements and Licenses §§ 81, 93; Telecommunications § 185.5.

Extent and reasonableness of use of private way in exercise of easement granted in general terms. 3 ALR3d 1256.

The easement granted to the Indiana and Michigan Electric Company was for a compatible use; accordingly, defendant was entitled to use that easement.

2. The right granted to Indiana and Michigan Electric Company was an easement rather than a mere license.

3. The attachment of defendant's cable to the electric company's poles does not materially increase the burden on plaintiffs' servient estate.

Affirmed.

1. EASEMENTS — PUBLIC UTILITIES — CABLE TELEVISION FRANCHISES.

The provision in the Cable Communications Policy Act of 1984 relating to the use by cable television franchisees of easements dedicated for compatible uses permits a cable television franchisee to use an easement which had been privately granted to a public electric utility (47 USC 541[a][2]).

2. EASEMENTS — PUBLIC UTILITIES — LICENSES.

A document which grants to a public electric utility the right to erect and maintain a line of utility poles across a designated piece of property in perpetuity conveys to the utility an easement across that property rather than merely granting the utility a license to use the property.

*Westrate, Holmstrom & Dobrish* (by *Mark A. Westrate*), for plaintiffs.

*Miller, Canfield, Paddock & Stone* (by *Michael B. Ortega*), for defendant.

Before: MURPHY, P.J., and HOOD and NEFF, JJ.

MURPHY, P.J. Plaintiffs appeal as of right from the trial court's grant of summary disposition in favor of defendant under MCR 2.116(C)(8), failure to state a claim on which relief can be granted. The court ruled that, as a matter of law, 47 USC 541(a)(2) gave defendant cable television company a right of access to use easements dedicated to compatible uses. The court further ruled that the easement held by Indiana and Michigan Electric Company (I & M) was dedicated to a use compatible with defendant's use of the easement. The court

further found that no genuine issues of fact existed and that defendant was entitled to judgment as a matter of law. MCR 2.116(C)(10). We affirm.

Plaintiffs are the owners of properties situated in Silver Creek Township, Cass County. Plaintiffs held this property subject to a pole-line easement granted to I & M in 1922 by plaintiffs' predecessors in interest. The conveying instrument described I & M's interest as follows:

> [T]he right and easement to erect, maintain and operate in perpetuity a line of poles for the supporting of electric power, telephone and telegraph wires, and the transmission thereby of electrical energy, power, light, heat or messages or anything, and for such further or other different uses and purposes or methods and needs as may hereafter prove practical.

In 1986, defendant was awarded a franchise to provide cable television service in Silver Creek Township. Shortly before receiving the franchise, defendant entered into an agreement with I & M for the use of I & M's utility poles. However, the agreement expressly stated that I & M was not conveying or guaranteeing any easement, right of way, or franchise for the construction and maintenance of defendant's attachments to the I & M utility poles. Defendant agreed to indemnify and defend I & M against claims arising out of defendant's failure to secure the right, license, permit, or easement to construct and maintain its attachments on I & M's poles.

In 1987, defendant attached its cable television wires to the I & M poles across the easement on plaintiffs' property. Plaintiffs demanded that defendant remove the wires. When defendant failed to comply, plaintiffs commenced the present action

alleging claims for trespass and unjust enrichment or quantum meruit.

On appeal, plaintiffs contend that the trial court erroneously granted summary disposition in defendant's favor because 47 USC 541(a)(2) does not give defendant an absolute right to install its cable television wires across a privately granted easement, regardless of whether the easement was dedicated to a compatible use. We disagree.

Section 621(a)(2) of the Cable Communications Policy Act of 1984, 47 USC 541(a)(2), provides:

> Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which is [sic] within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure—
> (A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;
> (B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and
> (C) that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator.

Plaintiffs argue that the term "public" as used in the statute modifies both rights of way and easements. Plaintiffs conclude that Congress intended to except a privately granted easement, such as the one at issue in the present case, from the general right of access granted in the statute.

Conversely, defendant argues, and the trial court agreed, that the plain language of 47 USC 541(a)(2), its legislative history, and judicial interpretation of the statute reveal a clear intent by Congress to grant franchised cable television companies a federal right to use any "easements dedicated to compatible uses," whether public or private. After reviewing the applicable federal case law, we agree with defendant.

The majority of courts that have construed the statute have rejected arguments that 47 USC 541(a)(2) grants only a right to construct cable television lines through publicly dedicated easements. *Cable Holdings of Georgia, Inc v McNeil Real Estate Fund VI, Ltd,* 678 F Supp 871, 873 (ND Ga, 1986); *Rollins Cablevue, Inc v Saienni Enterprises,* 633 F Supp 1315 (D Del, 1986). See also *Cable TV Fund 14-A, Ltd v Property Owners Ass'n Chesapeake Ranch Estates, Inc,* 706 F Supp 422, 434 (D Md, 1989) (cable company had a right to gain access to private residential community along easements therein which were dedicated for compatible uses); *Greater Worchester Cablevision, Inc v Carabetta Enterprises, Inc,* 682 F Supp 1244 (D Mass, 1985) (land owner conceded cable company's right to use whatever easements and public rights of way that were on the property so long as the use was compatible). In reaching this conclusion, the courts have relied on the legislative intent expressed in the language of the cable act itself and on the legislative history of the act.

47 USC 521 provides in pertinent part:

The purposes of this subchapter [47 USC 521 *et seq.*] are to—
(1) establish a national policy concerning cable communications;
(2) establish franchise procedures and standards

which encourage the growth and development of cable systems and which assure that cable systems are responsive to the needs and interests of the local community.

Additionally, the Report from the House Committee on Energy and Commerce stated:

Subsection 621(a)(2) [codified at 47 USC 541(a)(2)] specifies that any franchise issued to a cable system authorizes the construction of a cable system over public rights-of-way, and through easements, which have been dedicated to compatible uses. *This would include, for example, an easement or rights-of-way dedicated for electric, gas or other utility transmission.* Such use is subject to the standards set forth in section 633(b)(1)(A), (B) and (C). Consideration should also be given to the terms and conditions under which other parties with rights to such easements and rights-of-way make use of them. *Any private arrangements which seek to restrict a cable system's use of such easements or rights-of-way which have been granted to other utilities are in violation of this section and not enforceable.* [HR Rep No 934, 98th Cong (2d Sess) 59, reprinted in 1984 US Cong & Admin News 4655, 4696.]

See also *Centel Cable Television of Florida v Admiral's Cove Associates*, 835 F2d 1359, 1362, n 5 (CA 11, 1988) ("Congress intended to authorize the cable operator to 'piggyback' on easements 'dedicated for electric, gas, or other utility transmission' "). We believe that the broad scope of the above-expressed congressional intent requires a broad reading of the phrase "dedicated to compatible uses" to include any easements granted to a public utility for a use compatible with cable television.

However, we also note that there are decisions which reach a somewhat different conclusion. In

*Cable Investments, Inc v Woolley,* 867 F2d 151 (CA 3, 1989), the United States Court of Appeals for the Third Circuit rejected a cable company's argument that 47 USC 541(a)(2) allows cable operators to use *any* easements dedicated to a use compatible with the provision of cable television services. The Court stated that there was no support in the express language of the statute for a finding that " . . . Congress had authorized franchised cable operators to force their way onto private property, over the protests of the property owner, in order to offer cable television services to the tenants of the property owner." *Id.,* 155. The Court noted that Congress had ultimately deleted proposed sections of the cable act which granted cable operators mandatory access to multi-unit dwellings, provided for a system of just compensation for such takings and prohibited the property owners of multi-unit dwellings from demanding more than just compensation for such access. Consequently, the Court concluded that the cable operator had no right of access to the interior of a multi-unit apartment dwelling. *Id.,* 155-159.

However, we believe that *Cable Investments, supra,* is easily distinguished from the present case. Because the deleted proposed § 633 was directly applicable to the very issue presented in *Cable Investments,* the Court logically and properly concluded that Congress, by deleting that section, did not intend to allow cable operators to compel access to multi-unit apartment dwellings. The *Cable Investments* decision was also based, in part, on the fact that proposed § 633 was designed in response to *Loretto v Teleprompter Manhatten CATV Corp,* 458 US 419; 102 S Ct 3164; 73 L Ed 2d 868 (1982). In that case, the United States Supreme Court held that a New York statute which provided that landlords must allow cable

television companies to install cable facilities upon their property worked an unconstitutional taking of private property without just compensation. However, *Loretto* did not involve the use of preexisting utility easements, whether private or public.

Somewhat more troubling, however, is the recent decision, *Cable Associates, Inc v Town & Country Management Corp,* 709 F Supp 582 (ED Pa, 1989), in which the court focused on the meaning of the term "dedicated" as used in 47 USC 541(a)(2). The cable company argued that "dedicated" should be given its ordinary meaning of set aside for a definite purpose. *Id.,* 584. However, the court concluded that Congress had used "dedicated" as a term of art which must, consequently, be construed in a manner consistent with real property law. In that context, the concept of dedication involves a landowner's appropriation of his property to some public use and an acceptance by or on behalf of the public. Therefore, the court held that, even though the telephone company's easement extended into the individual units in the apartment building, the cable company had no right of access through that easement because it was a merely private right granted to the telephone company. *Id.,* 584-586. Again, however, we note that this case involved only a cable company's right to access the interior of privately owned apartment buildings.

For the most part, the cases construing 47 USC 541(a)(2) are of little help in the present case because they involve either accessing private multi-unit buildings or easements that were formally dedicated in a plat, rather than an accessing of an existing utility pole line in a privately granted easement. Most factually analogous to the present case is *Centel Cable Television Co of Florida v Thomas J White Development Corp,* unpub-

lished opinion of the Federal District Court for the Southern District of Florida, decided February 28, 1989 (Docket No. 88-14148-CIV-Roettger). In that case, the developer and owner of a large private residential development sought to exclude a franchise cable company from accessing both easements granted in private arrangements with utility companies and those designated as public utility easements in an effort to reserve for itself the exclusive right to provide cable service to the development's residents. In holding that the cable company had a right to access both the public and the private utility easements, the court noted that easements need not be "publicly" dedicated in order to be "dedicated" to compatible uses within the meaning of 47 USC 541(a)(2). "The legislature did not place any special significance on the meaning of the term 'dedicated' over and above its common meaning 'to set aside.' "

It is clear that the majority of courts which have construed the phrase "easements dedicated to compatible uses" have chosen to apply the broad common meaning of the terms used. Therefore, on the basis of our review of the language of 47 USC 521 *et seq.*, its legislative history, and the interpretative case law, we conclude that 47 USC 541(a)(2) grants cable television companies the right to access the easement dedicated to a compatible use held by I & M over plaintiffs' land. Furthermore, we note that the express language of I & M's easement evidences the grantor's intent to allow use of the easement beyond the I & M electrical wires, all of which are compatible with cable television service. The broad scope of this easement could reasonably be construed as a dedication for any use by public utilities.

We further note that Congress included a provision for just compensation of the property owner

for any damages caused by the cable company when installing, constructing, operating, or removing its facilities. 47 USC 541(a)(2)(C). We believe that this provision sufficiently addresses the problem of the Fifth Amendment prohibition against the taking of private property without just compensation raised by plaintiffs. Any taking that occurred through defendant's installation, maintenance, and use of cable television wires would seemingly be limited to such damages because defendant is using the preexisting I & M utility pole line over an easement for which, presumably, plaintiffs have been adequately compensated at a prior time. Plaintiffs fail to show how defendant's use of the easement materially increases the burden on their property. Without an additional burden, there has been no taking of plaintiffs' property. See *United Cable Television of Mid-Michigan v Louis J Eyde Limited Family Partnership,* unpublished opinion of the Federal District Court for Western Michigan, decided November 20, 1989 (Docket No. L89-30103 CA); *Greater Worcester Cablevision,* 682 F Supp 1259.

Alternatively, plaintiffs argue that the property interest granted to I & M was only a license rather than an easement. We disagree. A license is merely authority or permission to do some act or series of acts upon the licensor's land without having any permanent interest therein. *McCastle v Scanlon,* 337 Mich 122, 133; 59 NW2d 114 (1953); *Macke Laundry Service Co v Overgaard,* 173 Mich App 250, 254; 433 NW2d 813 (1988). A license is not assignable because it is based on personal confidence. *Sweeney v Hillsdale Co Bd of Rd Comm'rs,* 293 Mich 624, 630; 292 NW 506 (1940).

By contrast, an easement is an interest in land through which one individual has the right to use the land of another for a specific purpose. *Peaslee*

*v Saginaw Co Drain Comm'r,* 365 Mich 338, 344;
112 NW2d 562 (1962); *St Cecelia Society v Universal Car & Service Co,* 213 Mich 569, 576-577; 182
NW 161 (1921). The easement at issue is an easement in gross because it is not appurtenant to any
estate in land, but is a personal interest granted to
I & M to use plaintiffs' land for the erection and
maintenance of a utility pole line. *Smith v Dennedy,* 224 Mich 378, 380-383; 194 NW 998 (1923);
*Evans v Holoway Sand & Gravel, Inc,* 106 Mich
App 70, 78; 308 NW2d 440 (1981). Easements in
gross are generally unassignable. *Stockdale v
Yearden,* 220 Mich 444, 447-448; 190 NW 225
(1922). However, easements in gross which are
commercial in nature, such as easements for pipelines, telephone and telegraph lines, and railroads,
are generally assignable. *Johnston v Michigan
Consolidated Gas Co,* 337 Mich 572, 580-582; 60
NW2d 464 (1953).

The interest conveyed to I & M was something
more than a mere authority to temporarily use
plaintiffs' land. The conveying instrument grants
I & M the right to erect and maintain its pole line
"in perpetuity" and appears to assume assignability. Therefore, we conclude that the interest conveyed to I & M was an easement rather than a
license.

We also reject plaintiffs' contention that attachment of defendant's cable television wires to the
poles on the I & M easement materially increases
the burden on plaintiffs' servient estate and violates the rule that the use of an easement is
strictly confined to the purpose for which it was
intended. *Delaney v Pond,* 350 Mich 685, 687; 86
NW2d 816 (1958). Defendant's use of the easement
is clearly consistent with those uses expressly set
forth in the easement itself. Furthermore, the
enactment of 47 USC 541(a)(2) may be seen as a

legislative determination that the use of preexisting utility easements for cable television service does not materially overburden these easements.

For the reasons set forth above, we conclude that the trial court correctly concluded that 47 USC 541(a)(2) granted defendant a right to access the utility pole line easement across plaintiffs' property and that, therefore, plaintiffs had failed to state a claim on which relief could be granted.

Affirmed.