2004 WY 75

**BOX L CORPORATION, a Wyoming corporation, Russell Lucas and Jim Lucas, d/b/a Lazy Double A Ranch, Appellants (Plaintiffs),**

v.

**TETON COUNTY, Wyoming, by the BOARD OF COUNTY COMMISSIONERS OF TETON COUNTY, Consisting of Jolynn Coonce, Bob Shervin, Bill Paddleford, Sandy Shuptrine and Andy Schwartz; and Gros Ventre Utility Company, a Wyoming corporation, Appellees (Defendants).**

No. 03–153.

Supreme Court of Wyoming.

June 29, 2004.

Representing Appellants: William L. Miller of Miller & Fasse, P.C., Riverton, Wyoming.

Representing Appellee Board of County Commissioners of Teton County: James L. Radda, Deputy County Attorney, Jackson, Wyoming.

Representing Appellee Gros Ventre Utility Company: Christopher H. Hawks of Christopher Hawks, P.C., Jackson, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1] Servient estate owners brought a declaratory judgment action challenging a county's agreement with a utility company for use of a public road easement. The servient estate owners now appeal the district court's order granting the county and the utility company judgment on the pleadings. We affirm.

1. Because this appeal is from a judgment on the pleadings, we are compelled to mention an anomaly in the record. Apparently, the appellants filed two motions to amend their complaint, the second of which was granted. That motion

## ISSUES

1. May the grantee of a public road easement convey to another the right to use the right-of-way?

2. May a public road easement be used for purposes other than road travel?

## STANDARD OF REVIEW

[¶ 2] We recently reiterated our standard of review of a judgment on the pleadings in *Rodriguez v. Casey*, 2002 WY 111, ¶ 4, 50 P.3d 323, 325 (Wyo.2002):

W.R.C.P. 12(c) provides, in part, for motions for judgment on the pleadings:

"*Motion for judgment on the pleadings.*—After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."

We have a well-established standard for application of this rule:

"A defendant is entitled to judgment on the pleadings if the undisputed facts appearing in the pleadings, supplemented by any facts of which the district court may take judicial notice, establish that no relief can be granted.... A judgment on the pleadings is appropriate if all material allegations of fact are admitted in the pleadings and only questions of law remain."

*Greeves v. Rosenbaum*, 965 P.2d 669, 671 (Wyo.1998) (citing *Johnson v. Griffin*, 922 P.2d 860, 861–62 (Wyo.), *cert. denied*, 519 U.S. 971, 117 S.Ct. 402, 136 L.Ed.2d 316 (1996)). Our review is akin to consideration of a motion to dismiss under W.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. *Greeves*, 965 P.2d at 672. We consider the allegations of the complaint to be true, and view them in the light most favorable to the plaintiff. *Id.*

## FACTS [1]

[¶ 3] This controversy concerns the Spring Gulch Road, in Teton County, Wyo-

does not appear in the record, and neither does an amended complaint. The parties have stipulated for purposes of this appeal that the clerk of the district court transmitted to this Court a reformulated version of the original complaint,

ming. In 1975, Phillip W. Lucas (Lucas) granted to Teton County (the County) a Right of Way Easement for that portion of the Spring Gulch Road crossing his lands. The purpose of the easement was "to lay out, construct, inspect, operate and maintain a road for the use of the public...." Lucas granted the easement for a nominal fee, as a good citizen and neighbor.

[¶ 4] In 1981, Clifford P. Hansen, Martha C. Hansen, Peter B. Mead, Mary H. Mead, and Spring Creek Ranch Company (collectively Hansen/Mead) granted to the County a Spring Gulch Road Easement and Agreement for that portion of the Spring Gulch Road crossing their properties. The purpose of the easement was "to lay out, construct, operate and maintain a road thereon for the use of the public and for the placement of utilities...." The easement was to be perpetual and was to "inure to the benefit of the parties, their respective heirs, personal representatives, successors and assigns." The easement was granted for a nominal fee, as good citizens and neighbors.

[¶ 5] In 1987, Box L Ranch (Box L) granted to the county and its successors and assigns, an Easement for that portion of the Spring Gulch Road crossing its lands. The purpose of the easement was "to lay out, construct, inspect, operate and maintain a road for the use of the public...." Box L granted the easement for a nominal fee, as a good citizen and neighbor.[2]

[¶ 6] In 2002, the County and Gros Ventre Utility Company (Gros Ventre) entered into a Spring Gulch Road Right–of–Way Use Agreement (the Use Agreement). The purpose of the Use Agreement is to allow Gros Ventre, a wholly-owned subsidiary of the Jackson Hole Golf & Tennis Club, Inc., to construct "an eight (8) inch waste water interceptor line or main and appurtenant structures specifically including manholes for the purpose of connecting the current and proposed development at Jackson Hole Golf and Tennis Club, Teton Shadows, and possibly other adjacent development to the Town of Jackson Waste Water Collection and Treatment System." Gros Ventre is to pay the County $280,000.00 for the right to use the right-of-way.

[¶ 7] The appellants are the current owners of the servient estates in the Lucas and Box L Easements.[3] Their complaint sought from the district court a declaration that the County did not have the right to convey to Gros Ventre the right to use the right-of-way covered by the easements, and also sought an order enjoining the County from transferring any interest in the easements to any non-public entity or for any non-public use.

## DISCUSSION

[¶ 8] In their Joint Motion for Judgment on the Pleadings, the County and Gros Ventre first noted that Gros Ventre is a public utility,[4] and then presented three arguments supporting the legality of the Use Agreement: (1) the easements are assignable by their very terms; (2) commercial easements in gross are freely assignable; and (3) the proposed sewer line does not exceed the scope of the public road easements. The appellants' traverse to the motion contended in response that: (1) pursuant to *Public Ser-*

which is the document upon which we have based our review.

2. At this point, we must mention another anomaly in the record. Attached to the complaint, but not mentioned therein or anywhere else in these proceedings, is a fourth easement, this one dated in 1979 and being from Roderick P. Lucas and Box L Ranch, Inc., to the County. Entitled Right of Way Easement, it is identical in form to the easement granted by Phillip W. Lucas in 1975, although it does not appear to concern the same property. The parties have not explained or even mentioned this easement, and we will not speculate as to its effect.

3. Bradford Mead, as personal representative of the estate of Mary H. Mead, was a plaintiff below, but did not join in the appeal.

4. Wyo. Stat. Ann. § 37–1–101(a)(vi) (LexisNexis 2003) states, in part:

"Public utility" means and includes every person that owns, operates, leases, controls or has power to operate, lease or control:

. . .

(E) Any plant, property or facility for the supply, storage, distribution or furnishing to or for the public of water for manufacturing, municipal, agriculture or domestic uses, except and excluding any such plant, property or facility owned by a municipality[.]

*vice Commission v. Formal Complaint of WWZ Co.,* 641 P.2d 183, 187 (Wyo.1982), Gros Ventre, as a private sewage disposal company, is not a public utility; (2) the easements do not contain express assignment provisions; (3) the intent of the parties to the easements was limited to a roadway; (4) easements in gross are not freely assignable; (5) the proposed sewer line is not for the benefit of the public; and (6) the County cannot transfer an easement upon an easement. The parties make the same arguments on appeal.[5]

[¶ 9] The district court issued its decision letter on September 3, 2002, granting judgment on the pleadings to the County and Gros Ventre on two grounds: (1) commercial easements in gross are alienable; and (2) public road easements may be used for other purposes, including sewer lines. The district court added that, the appellants having conceded that the County could install a sewer line, it should make no difference that this sewer line was being installed by a private company. Finally, the district court noted that it did not appear the appellants were injured by the project.

[¶ 10] Discussion of the specific issues of this case best takes place in the context of the general law of easements. An easement is " 'an interest in land which entitles the easement holder to a limited use or enjoyment over another person's property.' " *Hasvold v. Park County School Dist. No. 6,* 2002 WY 65, ¶ 13, 45 P.3d 635, 638 (Wyo.2002) (*quoting Mueller v. Hoblyn,* 887 P.2d 500, 504 (Wyo.1994)). We attempt to ascertain the intent of the parties to an easement first from its language, and we resort to extrinsic evidence only if we find that language ambiguous. *Hasvold,* 2002 WY 65, ¶ 13, 45 P.3d at 638. Of particular pertinence to the present case is the distinction between an appurtenant easement and an easement in gross:

> " ' "An easement is appurtenant to the land when the easement is created to benefit and does benefit the possessor of the land in his use of the land." ' " *Weber v.*

*Johnston Fuel Liners, Inc.,* 519 P.2d 972, 975 (Wyo.1974) (quoting *Restatement of Property* § 453, at 2914 (1944)). In contrast, ' " "[a]n easement is in gross when it is not created to benefit or when it does not benefit the possessor of any tract of land in his use of it as such possessor." ' *Id.* (quoting *Restatement of Property, supra,* § 454, at 2917). An easement will not be presumed to be in gross when it can fairly be construed to be appurtenant. *Id.*"

*Hasvold,* 2002 WY 65, ¶ 14, 45 P.3d at 638 (*quoting R.C.R., Inc. v. Rainbow Canyon, Inc.,* 978 P.2d 581, 586 (Wyo.1999)). The parties concur that the Lucas and Box L easements are easements in gross.

[¶ 11] Generally, the law favors the free alienability of property interests. 63C Am.Jur.2d *Property* § 35 at 103 (1997). This public policy has been articulated as follows:

> "Property interests are, in general, alienable. If a particular property interest is not alienable, this result must be due to some policy against the alienability of such an interest. The policy of the law has been, in general, in favor of a high degree of alienability of property interests. This policy arises from a belief that the social interest is promoted by the greater utilization of the subject matter of property resulting from the freedom of alienation of interests in it."

*Thar v. Edwin N. Moran Revocable Trust,* 905 P.2d 413, 415 (Wyo.1995) (Thomas, J., dissenting) (*quoting Restatement of the Law of Property* § 489, cmt. a (1944)). *See also Williams v. Watt,* 668 P.2d 620, 635 (Wyo. 1983) (Thomas, J., specially concurring); *Hartnett v. Jones,* 629 P.2d 1357, 1361 (Wyo. 1981); and *McGinnis v. McGinnis,* 391 P.2d 927, 933 (Wyo.1964).

[¶ 12] This general rule of free alienability, however, has limited application to easements. An appurtenant easement is tied to the dominant estate, is conveyed with a conveyance of that estate, and cannot be conveyed independently thereof. *Voss v. Al-*

---

5. Because the district court's decision as to the Hansen/Mead easement was not appealed, and because no argument has been raised concerning

the 1979 Roderick P. Lucas easement, we will concern ourselves only with the 1975 Lucas easement and the 1987 Box L easement.

**816**

*bany County Com'rs,* 2003 WY 94, ¶ 28, 74 P.3d 714, 723 (Wyo.2003); *Baker v. Pike,* 2002 WY 34, ¶ 14, 41 P.3d 537, 542 (Wyo. 2002); *Weber v. Johnston Fuel Liners, Inc.,* 519 P.2d 972, 976–77 (Wyo.1974); 25 Am. Jur.2d *Easements and Licenses* § 103 (1996). Traditionally, easements in gross, having no dominant estate to which to be attached, were considered personal to their holder and, as such, non-assignable. 25 Am.Jur.2d, *supra,* at § 102; Alan David Hegi, Note, *The Easement in Gross Revisited: Transferability and Divisibility Since 1945,* 39 Vand. L.Rev. 109, 113 (1986). A distinction has developed, however, between commercial easements in gross and noncommercial easements in gross, the former, but not the latter, being found by many courts to be assignable. *Hegi, supra,* 39 Vand. L.Rev. at 117–18. *See, for example, Champaign Nat. Bank v. Illinois Power Co.,* 125 Ill.App.3d 424, 80 Ill.Dec. 670, 465 N.E.2d 1016, 1021 (1984); *Mumaugh v. Diamond Lake Area Cable TV Co.,* 183 Mich.App. 597, 456 N.W.2d 425, 430 (1990); *Kansas City Area Transp. Authority v. Ashley,* 485 S.W.2d 641, 645 (Mo.App. 1972); *Sunset Lake Water Service Dist. v. Remington,* 45 Or.App. 973, 609 P.2d 896, 899 (1980); and *Johnson v. Higley,* 989 P.2d 61, 66–67 (Utah App.1999), *cert. denied,* 994 P.2d 1271 (Utah 2000). This court has not previously decided whether commercial easements in gross are freely assignable. *Thar,* 905 P.2d at 414.

[¶ 13] The application of this distinction between commercial and noncommercial easements in gross to public easements was discussed in Hegi, *supra,* 39 Vand. L.Rev. at 118–19 (footnotes omitted and emphasis in original):

> Courts readily acknowledge the distinction between commercial and noncommercial easements in gross when evaluating whether to permit the transfer of public commercial easements in gross. Public commercial easements include those held by governmental units and public utilities. In addition to the policy that traditionally supports the transferability of commercial easement interests, the courts have noted another reason for justifying the free transferability of public commercial easements in gross: the benefit that the ease-

ment provides inures to the entire community, rather than to one individual or business. In *Champaign National Bank v. Illinois Power Co.,* [465 N.E.2d at 1017–18] for example, the court rejected plaintiff's attempt to thwart the transfer of a right of way easement in gross to defendant power company for the construction of power lines. Stating that "commercial easements in gross are alienable, ***especially*** when the easements are for utility purposes," the court upheld the transfer, finding that it served the public's interest.

[¶ 14] One of the facts contested in the present appeal is whether Gros Ventre is a public utility. This issue, however, was not raised in the pleadings, and was not addressed by the district court in its decision letter or order. While both sides have briefed and vigorously argued the matter, and while Gros Ventre asks this Court to take judicial notice of its purported status as a public utility, we decline to address the question because this is the review of a judgment granted on the pleadings.

[¶ 15] It is at this point that we must detour from the assessment of this case as presented by the parties. The question is not simply whether a public commercial easement in gross may be assigned to an entity such as Gros Ventre. To begin with, there is a question of whether the Use Agreement is actually in the nature of an assignment. "An assignment is an act or expression of intention by which one person causes to transfer, set over or vest in another a right of property or an interest therein." *Matter of Boyd's Estate,* 606 P.2d 1243, 1246 (Wyo.1980). In turn, a transfer contemplates a conveyance from one person to another or the passage of something from one person to another. *Merriam–Webster's Collegiate Dictionary* 1253 (10th ed.1999). Here, the County has simply allowed Gros Ventre to use a public easement; this was not an assignment of the easement from one entity to another.

[¶ 16] This situation may be more akin to what has been described as the "divisibility" of an easement, in contrast to its "assignability:"

The courts' and legislatures' recognition that easements in gross are transferable raises a related question—the divisibility of easements in gross. Divisibility differs from transferability because the original holder of the easement grants only a portion of his rights to another while retaining the remainder of his original rights for his own use. Divisibility, however, cannot arise as an issue unless courts first recognize transferability. If a court does not permit the transfer of an easement in gross as a whole, a court clearly will not permit a partial transfer of the easement.

Hegi, *supra*, 39 Vand. L.Rev. at 128 (footnote omitted). *See also Salvaty v. Falcon Cable Television*, 165 Cal.App.3d 798, 212 Cal.Rptr. 31, 35 (1985). As a general rule, courts have allowed the division of an easement where such has not increased the burden on the servient estate. Hegi, *supra*, 39 Vand. L.Rev. at 128–34.

[¶ 17] In a roundabout fashion, and without yet having determined the first issue, this leads us to the second issue, which is whether a public road easement may be used for purposes other than road travel. We answered this question affirmatively in *State v. Homar*, 798 P.2d 824, 826 (Wyo.1990):

The rights of the easement holder in another's land are determined by the purpose and character of the easement. *Bard Ranch Co. v. Weber*, 557 P.2d 722, 731 (Wyo.1976). The manner in which the easement is used does not become frozen at the time of grant. *Id.* An easement for a road or a highway does not limit its use to the movement of vehicles. Uses related to traffic movement are within the scope of the easement. The grant of a public road easement embraces every reasonable method of travel over, under and along the right-of-way. *Herold v. Hughes*, 141 W.Va. 182, 90 S.E.2d 451, 458 (1955). Thus, the running of power and telephone lines above the ground and pipelines underneath do not increase the burden on the servient estate and are permissible uses.

*E.g., Bentel v. County of Bannock*, 104 Idaho 130, 656 P.2d 1383 (1983); *Fisher v. Golden Valley Elec. Ass'n, Inc.*, 658 P.2d 127 (Alaska1983). *See* W.S. 1–26–813.[6] The reason underlying this policy is that the services and products these conveyances provide may change from earlier times when they were provided by messengers and freight wagons. Change was contemplated and must be accommodated in an advancing society. Thus, overhead transmission lines and underground pipelines are simply technologically advanced adaptations of traditional highway uses. *Fisher*, 658 P.2d at 129.

[¶ 18] The district court relied upon *Homar* and upon the *Bentel* case cited in *Homar* in reaching its decision in this case. We also find *Bentel* particularly instructive because it holds not only that a public road easement may be used for an underground sewer line, but also that such right is not defeated solely because the sewer line is to be constructed by a private entity:

Plaintiffs next argue that the county was without authority to grant permission to lay this particular pipeline within its easement because the pipeline is intended primarily for the benefit of, and will be owned by, the J.R. Simplot Co., a private corporation. We disagree. It is clear from the contract that the City of Pocatello will derive a direct and substantial benefit from construction of the pipeline, and that public benefit makes construction of the pipeline allowable within the scope of the county's public easement. Even were this not so, the county is not precluded from believing that the pipeline is in the public interest. The pipeline will directly produce local environmental benefits by reducing the amount of effluent discharged by Simplot into the Portneuf River. Not only does common sense lead us to recognize this as beneficial, but we note that both Congress and our state legislature have found such reductions in effluent discharge to be in

6. Wyo. Stat. Ann. § 1–26–813 (LexisNexis 2003) states, in part:

Corporations authorized to do business in this state for the purpose of constructing, maintaining and operating a public utility may set their fixtures and facilities along, across or under any of the public roads, streets and waters of this state in such manner as not to inconvenience the public in their use.

the public interest.... Furthermore, there is a presumption that the governing body's grant of use of a public easement is in the public interest.... This Court has recognized in other contexts that the fact that a private party may reap a special benefit from governmental action does not of itself militate against recognizing that the public interest is being served.

*Bentel v. Bannock County,* 104 Idaho 130, 656 P.2d 1383, 1387–88 (1983).

[¶ 19] The court in *Bentel,* 656 P.2d at 1388, cited the following cases as being in agreement with the above statement of law: *City of Phoenix v. Phoenix Civic Auditorium & Convention Center Ass'n, Inc.,* 99 Ariz. 270, 408 P.2d 818, 823 (1965); *McTaggart v. Montana Power Co.,* 184 Mont. 329, 602 P.2d 992, 996 (1979); *Town of Steilacoom v. Thompson,* 69 Wash.2d 705, 419 P.2d 989, 992 (1966); and *State ex rel. York v. Board of Com'rs of Walla Walla County,* 28 Wash.2d 891, 184 P.2d 577, 583 (1947). The first three cited cases do contain similar conclusions, although in the eminent domain context. The fourth cited case is a public easement case and, although much of its discussion is based in statutory construction, we find its analysis compelling:

Normally, the interest acquired by the public is but an easement.... But whatever the nature of the interest may be, it is held in trust for the public, and the primary purpose for which highways and streets are established and maintained is "for the convenience of public travel." ...

In addition to this primary purpose, however, there are numerous other purposes for which the public ways may be used, such as for watermains, gas pipes, telephone and telegraph lines, etc. These are termed secondary uses and are subordinate to, and permissible only when not inconsistent with, the primary object of the highways....

. . .

There is no contention that [the statute at issue] is unconstitutional, but it is asserted by the appellants that the franchise with which we are here concerned does not meet the terms of the statute. The point urged by them is that, as a matter of law, a franchise issued to a private corporation not intending to serve the general public cannot be "for the public interest." They insist that "public interest" is "public use," and no more.

. . .

We are of the further opinion that it cannot be held, as a matter of law, that a co-operative association engaged in the business of generating, purchasing, acquiring, selling, and distributing electric power for the benefit of its members is not acting for the public interest....

. . .

I. The fact that highways are dedicated to public use implies that they must be maintained primarily as public ways; and " * * * these public ways must be kept free from obstructions, nuisances, or unreasonable encroachments which destroy, in whole or in part, or materially impair, their use as public thoroughfares." ...

II. Subject to this primary use, highways may be put to any of the numerous incidental uses suitable to public thoroughfares.... The public easement " * * * includes every reasonable means for the transmission of intelligence, the conveyance of persons, and the transportation of commodities which the advance of civilization may render suitable for a highway."

. . .

"The restrictions upon its use are only such as are calculated to secure to the general public the largest practicable benefit from the enjoyment of the easement, and the inconveniences must be submitted to [by abutting owners] when they are only such as are incident to a reasonable use under impartial regulations."

*State ex rel. York,* 184 P.2d at 581–84 (*quoting* 4 McQuillin, *Municipal Corporations* § 1437 (2nd ed.); *McCullough v. Interstate Power & Light Co.,* 163 Wash. 147, 300 P. 165, 166 (1931); and *Omaha & Council Bluffs St. Ry. Co. v. City of Omaha,* 114 Neb. 483, 208 N.W. 123, 124 (1926)).

[¶ 20] It must be remembered that every member of the public has the right to use a public easement for its intended purposes, and that public road easements,

unless otherwise restricted, include the secondary rights described herein. The grantee of a public road easement must, in granting special use of the easement for a particular purpose, protect the general public's use of the easement and must ensure that the public interest is served by the special use. That does not mean that the special use must be available to all of the public or that there can be no private benefit from the special use.

 [¶ 21] The Use Agreement entered into between the County and Gros Ventre contains the following provision:

> 8. *Public benefit.* The parties have undertaken extensive studies and reviews of the benefits of the Jackson Hole Golf and Tennis Club development being serviced by the Town of Jackson for its waster [*sic*] water treatment needs. The parties have determined and agreed after consultation with and written recommendations from the Wyoming Department of Environmental Quality to the effect that waste water treatment needs of the development are best met by connection to the Town of Jackson Waste Water Treatment Plant, that it is in the best interests of the Jackson Hole Golf and Tennis Club development and the environment and health and safety of county residents that provisions be made for the connection as in this agreement set forth.

[¶ 22] It is not our job to second-guess the County as to this determination and there is nothing contained within the pleadings that even suggests the statement is erroneous. We conclude that the Use Agreement is in the public's interest, that it fits within the scope and purpose of the Lucas and Box L easements, and that Teton County was within its rights to enter into the agreement.

 [¶ 23] We hold that the right to use a public road easement, whether or not such easement is considered to be a commercial easement in gross, is transferable and divisible, so long as the transfer or division is in the public interest, and so long as the burden on the servient estate is not thereby increased.[7] This right is not dependent upon specific language in the easement grant allowing such assignment or division, but is, as a matter of law, part of the purpose of a public road easement. Not presently at issue is the question of whether this right may be defeated by specific language to the contrary contained in an easement grant.

 [¶ 24] We further hold that a proposed use of a public easement may be in the public interest despite the fact that a private entity intends to construct the project and despite the fact that a private entity may reap some benefit from the project. Similarly, a proposed use of a public road easement does not have to be intended to serve all the members of the general public to be in the public interest and to fit within the purpose of a public road easement.

[¶ 25] The order of the district court is affirmed.

---

7. For two reasons, we do not choose simply to state that we hereby adopt *Restatement of Property* § 489 at 3040 (1944) ("Easements in gross, if of a commercial character, are alienable property interests."). First, *Restatement of Property Third* (2000) has significantly restructured its approach to this area of the law, and this restructured law has not been addressed in the present case. And second, the present case is limited to the particular aspects of a public road easement.