HEYDON v MEDIAONE OF SOUTHEAST
MICHIGAN, INC

Docket No. 273109. Submitted April 10, 2007, at Lansing. Decided April
17, 2007, at 9:05 a.m.

Peter N. and Henrietta A. Heydon brought an action in the
Washtenaw Circuit Court against MediaOne of Southeast Michi-
gan, Inc., alleging that the defendant's addition of cable lines to
existing utility poles on the plaintiffs' property pursuant to an
agreement with Detroit Edison, which had a prescriptive ease-
ment in gross to the plaintiff's property and used the utility
poles to transmit electricity, constituted a continuing common-
law trespass. The trial court, Melinda Morris, J., granted the
defendant's motion for summary disposition, and the plaintiffs
appealed.

The Court of Appeals *held*:

1. A commercial, exclusive easement in gross acquired by
prescription can be apportioned unless the apportionment is
contrary to the terms of the servitude or unreasonably increases
the burden on the servient estate.

2. The apportionment of the easement in this matter does not
materially or unreasonably increase the burden on the servient
estate. The plaintiffs' assertion to the contrary is speculative and
unsupported by the record.

3. Applying the Cable Communications Policy Act, 47 USC
541 *et seq.*, to allow cable companies to "piggy-back" on private
easements is not an unconstitutional taking of private property
without just compensation, because the statute itself provides
that property owners be justly compensated for damages.

Affirmed.

1. EASEMENTS — PRESCRIPTIVE EASEMENTS — APPORTIONMENT.

A commercial, exclusive easement in gross acquired by prescription
can be apportioned unless the apportionment is contrary to the
terms of the servitude or unreasonably increases the burden on
the servient estate.

2. EASEMENTS — PUBLIC UTILITIES — CABLE COMPANIES.

> Applying the Cable Communications Policy Act to allow a cable company to use an easement that had been privately granted to a public electric utility is not an unconstitutional taking because the statute provides for just compensation to the owner of the servient estate (47 USC 541[a][2][C]).

*Fett & Fields, P.C.* (by *James K. Fett, Lawrence A. Fields,* and *Joshua R. Fields*), for the plaintiffs.

*Harvey Kruse, P.C.* (by *Dale R. Burmeister*), for the defendant.

Before: SERVITTO, P.J., and TALBOT and SCHUETTE, JJ.

PER CURIAM. Plaintiffs appeal as of right the trial court's order granting summary disposition in defendant's favor and dismissing plaintiffs' claims. Because a prescriptive easement in gross, commercial in nature, may be apportioned and because the apportionment of the easement in this matter does not materially or unreasonably increase the burden on the servient estate, we affirm.

This matter arises from a dispute over whether defendant acquired the right to enter plaintiffs' land to place and maintain cable television lines on already existing utility poles that Detroit Edison (Edison) used to transmit electricity. Edison undisputedly acquired the right to install and maintain electrical lines and poles on plaintiffs' property, and entered into an agreement with defendant allowing defendant to place and maintain cable television lines on the same utility poles ("apportioning" or partially assigning Edison's right to use the utility poles). When plaintiffs discovered that defendant was stringing cable lines on their property without their permission, they filed a complaint against defendant alleging a continuing common-law trespass and seeking recovery for damage to their land under MCL 600.2919.

Notably, plaintiffs had filed a prior action against defendant in 1999 that was pending when the instant case was initiated. The 1999 case (*Heydon I*) involved defendant's placement of cable lines on utility poles used by Edison on another parcel of their property. In *Heydon I*, Edison had been granted an express easement over the property by plaintiffs' predecessors in interest for purposes of providing and maintaining electricity and had apportioned its right to defendant, thereby allowing defendant to place and maintain cable television lines on the existing utility poles. That case proceeded to this Court, and, in *Heydon v MediaOne of Southeast Michigan, Inc,* unpublished opinion per curiam of the Court of Appeals, issued December 22, 2005 (Docket No. 255186), a panel of this Court affirmed the trial court's grant of summary disposition in defendant's favor, holding that defendant had the right (as a partial assignee) to use Edison's easement on plaintiffs' land. Upon resolution of *Heydon I*, both parties moved for summary disposition in the instant matter, and the trial court granted defendant's motion, dismissing plaintiffs' claims.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Zsigo v Hurley Medical Ctr*, 475 Mich 215, 220; 716 NW2d 220 (2006). A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for the plaintiff's claim. *Arias v Talon Dev Group, Inc,* 239 Mich App 265, 266; 608 NW2d 484 (2000). In evaluating a motion brought under this subrule, the Court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. *Spencer v Citizens Ins Co,* 239 Mich App 291, 299; 608 NW2d 113 (2000). "When the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id.*

Plaintiffs raise five arguments on appeal. First, plaintiffs contend that the easement Edison has over their property is prescriptive in nature and that such easements may not be assigned. According to plaintiffs, any assignment of the easement to defendant is thus invalid. We disagree.

"An easement is the right to use the land of another for a specified purpose." *Schadewald v Brulé,* 225 Mich App 26, 35; 570 NW2d 788 (1997). Michigan courts recognize two types of easements: easements appurtenant and easements in gross. *Collins v Stewart,* 302 Mich 1, 4; 4 NW2d 446 (1942). An appurtenant easement attaches to the land and is incapable of existence apart from the land to which it is annexed. *Schadewald, supra* at 35. An easement appurtenant is necessarily connected with the use or enjoyment of the benefited parcel and may pass with the benefited property when the property is transferred. *McClintic-Marshall Co v Ford Motor Co,* 254 Mich 305, 318; 236 NW 792 (1931).

"An easement in gross is one 'benefiting a particular person and not a particular piece of land.' " *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc,* 472 Mich 359, 379 n 41; 699 NW2d 272 (2005), quoting Black's Law Dictionary (7th ed). An easement in gross is thus personal in nature. *Smith v Dennedy,* 224 Mich 378, 381; 194 NW 998 (1923).

" '[A]n easement may be created by express grant, by reservation or exception, or by covenant or agreement.' " *Rossow v Brentwood Farms Dev, Inc,* 251 Mich App 652, 661; 651 NW2d 458 (2002), quoting *State Hwy Comm v Canvaser Bros Bldg Co,* 61 Mich App 176, 181; 232 NW2d 351 (1975). Easements can also be acquired by prescription.

An easement by prescription results from the use of the property of another that is open, notorious, adverse,

and continuous for a period of 15 years. *Goodall v Whitefish Hunting Club*, 208 Mich App 642, 645; 528 NW2d 221 (1995). A prescriptive easement is generally limited in scope by the manner in which it was acquired and the "previous enjoyment." 25 Am Jur 2d, Easements and Licenses, § 81, p 579. One who holds a prescriptive easement is allowed to do such acts as are necessary to make effective the enjoyment of the easement unless the burden on the servient estate is unreasonably increased; the scope of the privilege is determined largely by what is reasonable under the circumstances. *Mumrow v Riddle*, 67 Mich App 693, 699-700; 242 NW2d 489 (1976).

Here, the parties agree that Edison holds an easement in gross, acquired by prescription over plaintiffs' property. Michigan caselaw generally dictates that easements in gross, if of a commercial character, are alienable property interests and thus assignable. See, e.g., *Johnston v Michigan Consolidated Gas Co*, 337 Mich 572, 582; 60 NW2d 464 (1953). This proposition has been addressed in Michigan, however, only where express easements are concerned. Whether an easement in gross acquired by prescription is apportionable or assignable presents an issue of first impression in Michigan.

Only a few states have addressed, in reported decisions, whether this particular type of easement is apportionable, and most focus their attention on whether the easement is exclusive or nonexclusive in reaching their conclusions. In *Zhang v Omnipoint Communications Enterprises, Inc*, 272 Conn 627, 642; 866 A2d 588 (2005), the Connecticut court explained:

> "Courts have generally concluded [however] that an easement in gross is capable of division when the instrument of creation so indicates or when the existence of an

'exclusive' easement gives rise to an inference that the servitude is apportionable." In this context, "exclusive" means that the "easement holder has the sole right to engage in the type of use authorized by the servitude." In other words, the grantor does not retain common rights with the easement holder to engage in the same activity for which the easement is granted. See *Hoffman v. Capitol Cablevision Systems, Inc*, 52 App. Div. 2d 313, 315, 383 N.Y.S.2d 674 (1976) (finding easement exclusive because grantor never had attempted to engage in distribution of electricity). This common versus exclusive rights distinction is predicated on the notion that "one who grants to another the right to use the grantor's land in a particular manner for a specified purpose but who retains no interest in exercising a similar right himself, sustains no loss if, within the specifications expressed in the grant, the use is shared by the grantee with others. . . . We agree that the grant of an exclusive easement implicitly confers the authority to apportion those easement rights to third parties. (Internal citations omitted).

Closest to the facts of the present case is *Jackson v City of Auburn*, ___ So 2d ___; 2006 Ala Civ App LEXIS 168 (Ala Civ App, 2006). In *Jackson*, the plaintiff acquired property in 1978 on which the Alabama Power Company (APCo) maintained a power pole and power lines. Over the years, plaintiff sent several letters to APCo requesting that the power lines and pole be removed. APCo made no effort to rectify the situation. Lightwave Technologies, Inc. (Lightwave), entered into a pole-sharing agreement with APCo and, sometime in late 2000 or early 2001, began installing fiber-optic cable to the existing power pole on the property. In 2003, the plaintiff sued APCo and Lightwave (and others), primarily for trespass. The trial court found that APCo had acquired a prescriptive easement in gross over the property and next considered "whether APCo has the right to apportion its prescriptive easement and whether its apportionment to Lightwave was

within the scope of the prescriptive easement." *Id.* at *18. The *Jackson* court agreed that "prescriptive, exclusive easements in gross, like APCo's are apportionable," *id.* at *36, then turned its focus on the scope of APCo's prescriptive easement, the use that established the prescriptive right, and whether APCo's apportionment changed the character of the easement.

Also somewhat similar is *Hise v BARC Electric Cooperative*, 254 Va 341; 492 SE2d 154 (1997). In that case, a power company operated an electric power line pursuant to an alleged 30-foot prescriptive right of way across the plaintiffs' property. In an eminent domain proceeding, the power company acquired the rights to relocate its poles and to widen its prescriptive right of way. Since the power company had previously allowed a telephone company and a cable television company to use the easement for the power lines to string the lines for their services, these companies planned to relocate their lines to the new power company lines. The plaintiffs sued all three companies to compel the removal of the original poles and to enjoin the telephone and cable companies from transferring their lines to the new poles. The trial court determined that the telephone and cable companies could transfer their lines pursuant to their agreements with the power company, and the plaintiffs appealed. On appeal, the Virginia Supreme Court noted that "[i]f the easement in gross is exclusive, the owner of the easement may have the right of apportionment which is described as one of 'so dividing [an easement in gross] as to produce independent uses or operations' " and " '[w]hen an easement in gross is created by prescription, the question of its apportionability is decided in the light of the reasonable expectation of the parties concerned in its creation as inferred from the nature of the use by which it was created.' " *Id.* at 344-346, quoting 5 Restatement Property, § 493,

comments a and b. The court affirmed the trial court, holding that "the evidence supports a conclusion that the 30-foot prescriptive easement was apportionable, thereby giving the power company the right to permit the attachment of the telephone and cable lines to its poles within that area." *Id.* at 346-347.

Here, there is no evidence that plaintiffs could or did use the easement for the purpose of erecting and maintaining power lines. Edison having that sole privilege, its easement, like APCo's in *Jackson,* is an exclusive, prescriptive easement in gross. See 5 Restatement Property, § 493, comment c.

Plaintiffs have provided no caselaw holding that a prescriptive easement in gross, commercial in nature, cannot be apportioned. 2 Restatement Property, 3d, Servitudes, § 5.9, p 61 states that "[t]ransferable benefits in gross may be divided unless contrary to the terms of the servitude, or unless the division unreasonably increases the burden on the servient estate." An easement in gross is an alienable, and thus transferable, property right. See *Johnston v Michigan Consol Gas Co, supra.* Taking this into account, and finding guidance from our sister states on this issue, we hold that a commercial, exclusive easement in gross acquired by prescription can be apportioned unless contrary to the terms of the servitude, or unless the division unreasonably increases the burden on the servient estate.

Plaintiffs next argue, naturally, that the easement is invalid because the apportioning of the prescriptive easement to defendant materially burdens and imposes a new burden on that easement. We disagree.

As previously indicated, one who holds a prescriptive easement is allowed "to do such acts as are necessary to make effective the enjoyment of the easement," and the scope of the privilege is determined largely by "what is

reasonable under the circumstances." *Mumrow, supra* at 699. The owner of an easement cannot materially increase the burden of the easement or impose a new and additional burden on the servient estate. *Delaney v Pond,* 350 Mich 685, 687; 86 NW2d 816 (1957); *Schadewald, supra* at 36.

There are cases outside this jurisdiction, which plaintiffs cite, to support the position that placing cable wires in a utility easement imposes a new burden on the servient estate. In *Jackson, supra,* the court found that only those rights acquired by APCo could be apportioned, and that APCo acquired only the right to string electrical power lines over the property. The court thus concluded that APCo's apportionment to Lightwave for the purpose of stringing cable television wires was beyond the scope of its easement.

The Missouri court reached a similar result in *Ogg v Mediacom, LLC,* 142 SW3d 801 (Mo App, 2004). In that case, the Oggs sued Mediacom (which sells cable television services) for trespass when Mediacom installed several feet of underground and aerial fiberoptic cable on the Oggs' property without their consent. The aerial cable was strung on poles over which an electric company had a prescriptive easement it had held for decades and which it had apportioned to Mediacom. The Missouri Court of Appeals noted that, in Missouri,

the rights of the holder of an easement acquired by prescription are defined solely by the character and extent of the use made thereof during the prescriptive period. That is to say, when an easement is acquired by prescription, the rights of the holder are "fixed and determined by the use under which it is gained. . . . Under prescription an exclusive right of possession can not be established but only a qualified right for a particular purpose." [*Id.* at 809 (internal citations omitted).]

The *Ogg* court determined that the right acquired by the electric company was only to operate and maintain electrical wires, and that apportioning its right to allow Mediacom to string cable wire on the poles impermissibly expanded the character or extent of the prior prescriptive use. *Id.* at 810.

Other states have reached the opposite conclusion. In *Centel Cable Television Co of Ohio, Inc v Cook,* 58 Ohio St 3d 8; 567 NE2d 1010 (1991), the court found that the transmission of television signals through coaxial cable by a cable television company constitutes a use similar to the transmission of electric energy through a power line by an electric company, because companies broadcasting television signals through coaxial cable use electrical power or "electric energy." *Id.* at 11. The court thus held that the "stringing of coaxial cable by a cable television company along an easement owned by a public utility constitutes no additional burden to the owner of the servient estate." *Id.* at 12.

Only one Michigan case has addressed this issue, and it resolved the matter as Ohio did. In *Mumaugh v Diamond Lake Area Cable TV Co,* 183 Mich App 597; 456 NW2d 425 (1990), the plaintiffs owned certain properties subject to an easement their predecessors granted to an electric company to construct and maintain poles and lines. The defendant, a cable television company, entered into an agreement with the electric company to use the poles to string cable wires. The plaintiffs did not consent to the defendant's use of the poles and brought suit against the cable company based on theories of trespass and unjust enrichment or quantum meruit. The trial court granted summary disposition in the defendant's favor, ruling that the Cable Communications Policy Act (CCPA), 47 USC 541 *et seq.,* granted the cable company a right of access to ease-

ments of compatible use, such as the electric company's. The Court also expressly rejected the plaintiffs' contention that attachment of defendant's cable television wires to the poles on a utility easement materially increased the burden on plaintiffs' servient estate and violated the rule that the use of an easement is strictly confined to the purpose for which it was intended. "Defendant's use of the easement is clearly consistent with those uses expressly set forth in the easement itself. Furthermore, the enactment of 47 USC 541(a)(2) may be seen as a legislative determination that the use of preexisting utility easements for cable television service does not materially overburden these easements." *Id.* at 607-608.

While we are not bound by *Mumaugh,* see MCR 7.215(J)(1), we see no reason to reach a different conclusion. Plaintiffs assert that the new and additional burden on the servient estate would be the doubling of maintenance and repair use of the property. However, this appears to be speculation, as there is no indication of the extent of the maintenance and repair that would be necessary for the cable lines. There is also no evidence of the extent of the repair and maintenance by Edison. Thus, there is nothing in the record to indicate that the burden would be unreasonably increased as a result of the apportionment to defendant. The record does not reveal the existence of a material factual dispute regarding whether the fiberoptic cable unreasonably or materially increased the burden on plaintiffs' property.

The above being true, the issue becomes whether the apportioned easement is contrary to the terms of the servitude. The easement at issue being prescriptive in nature, there are no express "terms" against which to measure the use. As stated in *Mumrow, supra* at 699,

the scope of the privilege enjoyed by the owner of a prescriptive easement "is determined largely by what is reasonable under the circumstances."

Edison clearly acquired a right to string and maintain electrical lines on utility poles located on plaintiffs' property. There was no evidence presented to establish that the stringing of additional wires on the same poles by a cable company is unreasonable. As indicated in *Centel Cable Television Co, supra,* it is "apparent that companies broadcasting television signals through coaxial cable utilize electrical power or 'electric energy.' " *Id.* at 11. The apportionment of Edison's easement allows for similar transmission and uses the original purpose of the easement; therefore, the apportionment is not contrary to the terms or prior use of the servitude.

Plaintiffs next contend that the CCPA prohibits cable companies from "piggy-backing" on private easements such as the one at issue. While both parties raised and addressed this issue in their summary disposition briefs, the trial court merely stated that the CCPA was constitutional and did not address the specific argument set forth here. Because the trial court did not rule on the issue and appellate review is limited to issues actually decided by the trial court, we need not necessarily address this issue on appeal. *Allen v Keating,* 205 Mich App 560, 564-565; 517 NW2d 830 (1994). Nevertheless, this Court may " 'review issues not raised below if a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case.' " *Brown v Loveman,* 260 Mich App 576, 599; 680 NW2d 432 (2004), quoting *Providence Hosp v Nat'l Labor Union Health & Welfare Fund,* 162 Mich

App 191, 194-195; 412 NW2d 690 (1987). We decline to address this issue on appeal, as it is unnecessary to the ultimate resolution of this case.

Plaintiffs also argue that interpreting and applying the CCPA to allow cable companies to "piggy-back" on private easements violates the taking clause of the United States Constitution. On this issue, the trial court simply opined that the CCPA was constitutional, without further explanation. However, in light of the fact that the only constitutional issue raised by the parties with respect to the CCPA concerned the taking clause, the trial court effectively ruled that the CCPA does not violate the taking clause.

This Court reviews questions of law involving statutory interpretation de novo. *Michigan Muni Liability & Prop Pool v Muskegon Co Bd of Co Rd Comm'rs,* 235 Mich App 183, 189; 597 NW2d 187 (1999). We similarly review de novo whether a government has effectuated a taking of property. *K & K Constr, Inc v Dep't of Natural Resources,* 267 Mich App 523, 544; 705 NW2d 365 (2005).

The federal and state constitutions both proscribe the taking of private property for public use without just compensation. US Const, Am V; Const 1963, art 10, § 2; *Adams Outdoor Advertising v East Lansing (After Remand),* 463 Mich 17, 23; 614 NW2d 634 (2000); *Oakland Co Bd of Co Rd Comm'rs v JBD Rochester, LLC,* 271 Mich App 113, 114; 718 NW2d 845 (2006). The purpose of just compensation is to put property owners in as good a position as they would have been had their property not been taken from them. *Poirier v Grand Blanc Twp (After Remand),* 192 Mich App 539, 543; 481 NW2d 762 (1992).

" 'Taking' is a term of art with respect to the constitutional right to just compensation and does not neces-

sarily mean the actual and total conversion of the property. Whether a 'taking' occurs for which compensation is due depends on the facts and circumstances of each case." *Hart v Detroit,* 416 Mich 488, 500; 331 NW2d 438 (1982). A governmental entity's actions might amount to a taking of private property even though the agency never directly exercised control over the property, provided that some action by the government constitutes a direct disturbance of or interference with property rights. *In re Acquisition of Land— Virginia Park,* 121 Mich App 153, 159; 328 NW2d 602 (1982).

This issue can be resolved by looking to the CCPA itself. 47 USC 541(a)(2)(C) provides that in using easements the cable operator shall ensure "that the owner of the property be justly compensated by the cable operator for any damages caused by the installation, construction, operation, or removal of such facilities by the cable operator." Because the act contains language addressing just compensation, it can be presumed that Congress anticipated arguments premised on a violation of the "taking clause" and sought to address the same within the act. *Mumaugh, supra,* recognized as much:

> We further note that Congress included a provision for just compensation of the property owner for any damages caused by the cable company when installing, constructing, operating, or removing its facilities. 47 USC 541(a)(2)(C). We believe that this provision sufficiently addresses the problem of the Fifth Amendment prohibition against the taking of private property without just compensation raised by plaintiffs. [*Id.* at 605-606.]

We agree with *Mumaugh* and hold that the CCPA adequately addresses the concerns raised by plaintiffs regarding the taking of private property for public use without just compensation.

Plaintiffs also assert on appeal that the doctrines of laches, law of the case, *stare decisis,* and res judicata do not preclude their action because there was no unexcused or unexplained delay in bringing the matter, the *Heydon I* and *Mumaugh* cases are not binding precedent, and there was a material difference between the facts of the present matter and those in *Heydon I.* Generally, to preserve an issue for appellate review, it must be raised by a party and addressed by the trial court. *Brown, supra* at 599. Appellate review is limited to issues actually decided by the trial court. *Allen, supra.*

Here, the trial court did not address or actually decide if any of the doctrines cited by plaintiff are applicable. While, in certain circumstances, review may still be appropriate, we decline to address the arguments here.

Affirmed.