# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

VERNON BERNHARDT TACKMAN, JR.,

    Defendant-Appellee.

FOR PUBLICATION
May 2, 2017
9:05 a.m.

No.  330654
Bay Circuit Court
LC No.  14-010852-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

TERRY LAWRENCE HORNER,

    Defendant-Appellee.

No.  330656
Bay Circuit Court
LC No.  14-010780-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v

STEVEN MICHAEL VANTOL,

    Defendant-Appellee.

No.  331874
Bay Circuit Court
LC No.  14-010781-FH

---

Before:  CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals, the prosecution appeals as of right the trial court's orders dismissing criminal charges against the defendants under the provisions of the Michigan Medical

-1-

Marihuana[1] Act (MMMA), MCL 333.26421, *et seq.* We reverse in all three cases and remand for proceedings not inconsistent with this opinion.

Docket No.'s 330654 and 330656

Defendant Tackman obtained a card on October 19, 2011, allowing him to use medical marijuana as a patient. Sometime before September 10, 2014, Tackman also became a licensed medical marijuana caregiver, although the number of patients he served overall is unclear; Tackman asserted that on September 10, 2104, he served two valid medical marijuana cardholders. On or about May 1, 2014, Tackman was convicted of delivery or manufacture of marijuana, MCL 333.7401(2)(d)(*iii*), a felony. Tackman was placed on probation under terms which allowed him to continue being a caregiver until Mid-August of 2014.

Defendant Horner was granted a card for personal use of medical marijuana in 2012 and 2013. In 2013, he was also granted a MMMA license to act as a caregiver for up to five patients. On or about November 1, 2013, Horner was convicted of maintaining a drug house, MCL 333.7405(1)(d), and the felony of delivery or manufacture of marijuana, MCL 333.7401(2)(d)(*iii*). Horner was placed on probation and an extended delay of sentence term whose terms prohibited him from "us[ing] or possess[ing] any controlled substance or drug paraphernalia, unless prescribed for [him] by a licensed physician, or be[ing] with anyone [he] know[s] to possess these items," but allowing marijuana use "so long as he has a valid medical marijuana card."

On or about September 9, 2014, Officer John May drove by Tackman's home and noted the smell of marijuana coming from the home. He also noted a garage door covered in plywood and three air conditioners on the east side of the garage. Officer May contacted Tackman's probation officer and the two of them went to Tackman's home on September 10, 2014, to conduct a search. The search revealed what May termed a "marijuana grow operation" including a dehumidifier and glass pipe, suspected (and later confirmed) cocaine residue, 36 marijuana plants, pieces of marijuana, and other marijuana, as well as ammunition for guns. From the items transported to them, the Michigan State Police Crime lab identified 21 marijuana plants and 81.1 grams of marijuana. On the basis of these findings, the prosecution issued four criminal charges against Tackman as a second habitual offender, MCL 769.10: (1) delivery or manufacture of five to 45 kilograms of marijuana, MCL 333.7401(2)(d)(*ii*), second or subsequent offense, (2) possession of ammunition by a felon, MCL 750.224f(6), (3) maintaining a drug house, MCL 333.7405(1)(d) and MCL 333.7406, second or subsequent offense, and (4) possession of less than 25 grams of a narcotic, MCL 333.7403(2)(a)(*v*), second or subsequent offense.

May received information from officers who had been sent to Horner's home on August 12, 2014, to respond to an alarm that they noticed an odor of growing marijuana coming from

---

[1] The spelling "marihuana" will be used when quoting the MMMA in deference to the spelling employed therein. Otherwise, the more common spelling, i.e., "marijuana" will be used. See *People v Carruthers*, 301 Mich App 590, 594 n 1; 837 NW2d 16 (2013).

Horner's detached garage. Another officer was in the area of Horner's home on September 9, 2014, and noted an odor of marijuana, and saw air conditioners running which was suspicious in light of the cooler temperature. This information was also relayed to May. May obtained a search warrant for Horner's home and executed the same on September 18, 2014. When he and other officers arrived, defendant Steven Vantol was inside the garage. Also inside the garage, May found 36 marijuana plants (21 of which were identified as such by the controlled substances unit), drug paraphernalia, and ammunition for a 45 caliber weapon. On the basis of these findings, Horner was charged as a third habitual offender, MCL 769.11, with delivery or manufacturing of five to 45 kilograms of marijuana, MCL 333.7401(2)(d)(*ii*), second or subsequent offense, and possession of firearm ammunition by a felon, MCL 750.224f(6).

Defendants Horner's and Tackman's cases proceeded in tandem. Both filed motions to dismiss count I of their respective informations, involving delivery or manufacture of marijuana, pursuant to § 4 of the MMMA, MCL 333.26424. Both asserted that they were "licensed medical marijuana cardholder[s]," who acted as "caregiver[s]," and "possessed" and grew less than the maximum amount of medical marijuana permitted under the act. Both claimed immunity from prosecution for the delivery or manufacture of marijuana.

The prosecution admitted that defendant Tackman was a medical marijuana patient, but denied that he had a valid caregiver license on the date that his home was searched, on the ground that he could not act as a caregiver after August 20, 2014, under the terms of his probation. The prosecution further maintained that Tackman did not qualify for § 4 patient immunity because he possessed more marijuana than the MMMA permitted a medical marijuana patient. Similarly, the prosecution admitted that defendant Horner was a medical marijuana patient, but denied that he had a valid caregiver license on the date that his home was searched on the ground that Horner's November 1, 2013, felony drug convictions left him ineligible to maintain such a license.

Both defendants also filed motions to suppress the evidence recovered in the searches of their respective homes. Defendant Tackman argued that his probation officer lacked authority to search his home. Tackman additionally asserted that he was a licensed MMMA caregiver on the day of the search, which status legally allowed him to possess marijuana. Defendant Horner asserted that the search warrant was not supported by probable cause and that he was a "licensed medical marijuana patient . . . and . . . caregiver" on the date that his home was searched.

The trial court found that Horner had MMMA "immunity" because "at all times during these proceedings . . . [d]efendant [Horner] was vested with a care card under the" MMMA, that the Act is not "self-effectuating," but rather, "the statute" "call[s] for the Secretary of State to issue cards to various people . . . upon satisfaction of certain conditions" and "[i]t is incumbent on the Secretary of State . . . to have procedures in place that adequately comply with the Act." And, the trial court found that "there is no dispute" that the amount of marijuana found was within the amounts authorized by the statute. Accordingly, the trial court granted Horner's motion to dismiss count I, and then dismissed all charges against him.

The trial court similarly concluded that Tackman was immune under the MMMA. The trial court "believe[d] it[ was] incumbent upon the Secretary of State . . . to revoke [defendant Tackman's] card in the event a felony has been entered," and found that "the Secretary of State

-3-

did not revoke [defendant Tackman's] caregiver card." Accordingly, it granted Tackman's motion to dismiss count I, and then dismissed all charges against him. These appeals followed.

On appeal, the prosecution argues that the trial court reversibly erred in dismissing the charges against defendants based upon the MMMA. We agree.

A trial court's factual findings relating to § 4 immunity under the MMMA are reviewed for clear error, but the attendant legal determinations are reviewed de novo. *People v Hartwick*, 498 Mich 192, 201; 870 NW2d 37 (2015). A trial court's decision on a motion to dismiss criminal charges is reviewed for an abuse of discretion, which occurs when the "decision falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). Also, "[a] trial court necessarily abuses its discretion when it makes an error of law." *People v Waterstone*, 296 Mich App 121, 132; 818 NW2d 432 (2012).

Under the MMMA, "[t]he medical use of marihuana is allowed under state law to the extent that it is carried out in accordance with the provisions of th[e] act." MCL 333.26427(a). In addition, patients and caregivers are allowed to possess marijuana, in relevant part, as follows:

(a) A qualifying patient who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner . . . provided that the qualifying patient possesses an amount of marihuana that does not exceed a combined total of 2.5 ounces of usable marihuana and usable marihuana equivalents . . . . The privilege from arrest under this subsection applies only if the qualifying patient presents both his or her registry identification card and a valid driver license or government-issued identification card that bears a photographic image of the qualifying patient.

(b) A primary caregiver who has been issued and possesses a registry identification card is not subject to arrest, prosecution, or penalty in any manner . . . for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act. . . . This subsection applies only if the primary caregiver possesses marihuana in forms and amounts that do not exceed any of the following:

(1) For each qualifying patient to whom he or she is connected through the department's registration process, a combined total of 2.5 ounces of usable marihuana and usable marihuana equivalents.

(2) For each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility. [MCL 333.26424]

The MMMA defines "primary caregiver" or "caregiver" as:

a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana and who has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs

-4-

or a felony that is an assaultive crime as defined in section 9a of chapter X of the code of criminal procedure, 1927 PA 175, MCL 770.9a. [MCL 333.26423(k)]

The act defines "qualifying patient" or "patient" as "a person who has been diagnosed by a physician as having a debilitating medical condition." [MCL 333.26423(l)]

It is undisputed that both Tackman and Horner had been convicted of a felony prior to the September 2014 searches of their homes. Thus, neither was eligible for § 4(b) caregiver immunity. That is necessarily so, as the MMMA defines a caregiver as one who "has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs." Neither Tackman nor Horner meet that definition.

Moreover, neither defendant Tackman nor defendant Horner were eligible for § 4(a) patient immunity because each exceeded the "volume limitations" for a patient. See *Hartwick*, 498 Mich at 201. Again, § 4(a) specifies that patients may possess up to only "2.5 ounces of usable marijuana" and, if lacking a caregiver, up to "12 marihuana plants." MCL 333.26424(a). But officers found 81.1 grams of marijuana and 21 marijuana plants at defendant Tackman's residence, and 21 marijuana plants at defendant Horner's residence. The MMMA provides no basis for the trial court's finding that Tackman and Horner retained immunity from prosecution because their registration cards had not been revoked, and the court cited no MMMA provision or caselaw supporting this conclusion. Further, neither party on appeal puts forward any caselaw or statutory provision supporting that aspect of the decision below.

The MMMA states that the "department" of Licensing and Regulatory Affairs must issue a registry identification card to a caregiver if a qualifying patient names the person as his or her sole caregiver and the caregiver has no more than five qualifying patients. MCL 333.26423(c); MCL 333.26426(a) and (d). "The department may deny an application or renewal . . . if [it] determines that the information provided was falsified." MCL 333.26426(c). Cards "expire 2 years after the date of issuance." MCL 333.26426(e). And, a caregiver card must be revoked if the caregiver "sells marihuana to someone who is not allowed to use marihuana for medical purposes under" the MMMA. MCL 333.26424(k). We are aware of no other revocation provisions within the MMMA. The definition of "caregiver" specifically restricts that status to persons who have "not been convicted of any felony within the past 10 years," or "of a felony involving illegal drugs or . . . that is an assaultive crime," without regard for whether that person happened to possess a caregiver card at the time of the conviction. MCL 333.26423(k). Thus, whether the caregiver card was revoked or not is irrelevant. Accordingly, Tackman's May 2014 conviction deprived him of caregiver status in connection with the September 2014 search of his home and the criminal proceedings that followed. Similarly, Horner's November 2013 conviction deprived him of caregiver status, as a matter of statutory definition, when the September 2014 search of his home took place.[2]

---

[2] If the Department of Licensing and Regulatory Affairs issued Horner another caregiver card on August 12, 2015, as he claims, it would have done so in error because, as explained above, he did not meet the definition of "caregiver."

Instead of relying on the MMMA itself, the trial court looked beyond it and analogized the failure to revoke a caregiver card to the failure of the Secretary of State to revoke a driver's license following a driving offense calling for such revocation. In fact, the record contains no evidence of such a Secretary of State procedure. The Motor Vehicle Code does specify that upon a certain number of operating-while-intoxicated convictions within a certain period, "the secretary of state shall revoke [offender's] operator's . . . license." MCL 257.303(2)(c). And, of course, a person is subject to criminal prosecution for driving on a revoked license. MCL 257.904(1). But there is no similar scheme within the statutes criminalizing marijuana and the MMMA. Rather, the manufacture and delivery of marijuana remains a crime in this state. *Hartwick*, 498 Mich at 209; MCL 333.7401(2)(d). A person may be immune from prosecution by complying with the MMMA's § 4, MCL 333.26424, but the revocation of a MMMA caregiver card has no bearing on the criminality of delivery and manufacture of marijuana. Therefore, the trial court's likening of revocation of caregiver cards to revocation of driver's licenses was a poor analogy. Because neither defendant qualified for the MMMA's § 4 immunity, the trial court abused its discretion in dismissing defendants' cases on this basis. See *Waterstone*, 296 Mich App 132.

<u>Docket No. 331874</u>

As indicated in docket no.'s 330654 and 330656, when Officer May executed a search warrant at defendant Horner's home on September 18, 2014, he found defendant Steven Vantol inside Horner's garage. Vantol, Horner's neighbor, admitted to watering the marijuana plants at Horner's home for him on several occasions while Horner was gone. Vantol was thereafter charged with one felony count of manufacturing marijuana contrary to MCL 333.7401(2)(d)(iii), second offense. There is no evidence that defendant Vantol ever acted as a patient or caregiver under the MMMA.

Vantol filed a motion to suppress the evidence recovered in the search of Horner's home, asserting his own standing to challenge the warrant as not issuing from probable cause. Vantol further argued that the trial court should quash the information because the prosecution failed to establish probable cause at the preliminary hearing that he manufactured marijuana. The trial court granted Vantol's motion to dismiss pursuant to the MMMA. The trial court explained that because Horner had a valid care giver card from the Secretary of State that had not been revoked, Horner was legitimately in business as far as the MMMA is concerned, and thus that Vantol also came under the protections of the MMMA. The prosecution agreed with the trial court's position that if its ruling on Horner's case was upheld, it would leave no basis for proceeding against Vantol.

On appeal, the prosecution asserts that the trial court reversibly erred in granting defendant Vantol's motion to dismiss, as Vantol was neither a patient nor caregiver under the MMMA and was thus not entitled to any protections and immunities available under the same. We agree.

Patients and caregivers who comply with the MMMA may be immune from prosecution under MMMA's § 4. *Hartwick*, 498 Mich at 209. The MMMA defines a patient as "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(*l*). The MMMA defines a caregiver as "a person . . . at least 21 years old . . . who has

-6-

agreed to assist with a patient's medical use of marihuana and who has not been convicted of any felony within the past 10 years and has never been convicted of a felony involving illegal drugs or a felony that is an assaultive crime . . . ." MCL 333.26423(k).

Section 4(a) governs patient immunity. MCL 333.26424(a). Section 4(b) governs caregiver immunity. MCL 333.26424(b). To claim such immunity, a putative patient or caregiver must show "by a preponderance of the evidence that, at the time of the charged offense," he or she "possessed a valid registry identification card," complied with § 4's "volume limitations," "stored any marijuana plants in an enclosed, locked facility," and "was engaged in the medical use of marijuana." *Hartwick*, 498 Mich at 201. Section 4(a) specifies that patients may possess up to only "2.5 ounces of usable marijuana" and, if lacking a caregiver, up to "12 marihuana plants." MCL 333.26424(a). Section 4(b) specifies that caregivers may have up to only "2.5 ounces of usable marihuana" and "12 marihuana plants" per "qualifying patient." MCL 333.26424(b).

In this case, defendant Vantol asked the trial court to dismiss his charge under § 4 because he was acting as defendant Horner's agent at the time of the instant offenses, thus hoping that Horner's compliance with the MMMA would extend the resulting immunity to him. The trial court agreed[3] and granted his motion. But, as explained in dockets no. 330654 and 330656, Horner did not in fact qualify for MMMA immunity because he possessed more marijuana than allowed a single patient, and did not meet the definition of a "caregiver." Because Horner did not qualify for immunity, no agent of his may claim immunity derived from Horner.

The parties raise additional arguments that were never addressed by the trial court. Because appellate review is limited to issues actually decided by the trial court, we need not address those issues on appeal. *Heydon v MediaOne*, 275 Mich App 267, 278; 739 NW2d 373 (2007).

Reversed and remanded for proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ David H. Sawyer
/s/ Deborah A. Servitto

---

[3] The trial court did not expressly state that it found that defendant Vantol in fact acted as Horner's "agent," but especially because Vantol's motion to dismiss was premised on such an agency argument, the matter seems little in doubt.