# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* THOMAS ROWE STOCKTON TRUST.

---

CHARLES P. STOCKTON, Trustee,

      Appellee,

v

THOMAS W. STOCKTON,

      Appellant.

UNPUBLISHED
September 19, 2017

No. 332278
Washtenaw Probate Court
LC No. 14-000142-TV

---

Before: HOEKSTRA, P.J., and METER and K. F. KELLY, JJ.

PER CURIAM.

Appellant Thomas W. Stockton petitioned the probate court to remove appellee Charles Stockton as trustee, to appoint a non-family member as successor trustee, to order Charles to return all trustee fees, and to hold Charles personally liable for attorney fees incurred by the trust and Thomas in previous litigation. The probate court denied the relief sought by Thomas. Thomas now appeals as of right. For the reasons stated in this opinion, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

The decedent, Thomas Rowe Stockton, died on July 10, 2012, and was preceded in death by his wife, Barbara Stockton. Before his death, decedent established the trust at issue in this case, which he amended and restated on January 12, 2011, naming his five adult children as beneficiaries and providing for the division of the trust property among his children on his death. The decedent's children are Thomas, Charles, Nancy Burghardt, Jennifer Stockton, and Cynthia Ward. Charles is the trustee of the trust, and Cynthia is named in the trust documents as successor trustee.

During his lifetime, the decedent had been a collector of engines and other items, including a valuable engine known as "the Sombart," which was on permanent loan with the Coolspring Power Museum (CPM) in Coolspring, Pennsylvania at the time of the decedent's death. Shortly after decedent's death, Thomas claimed ownership of the Sombart and sold it to a friend for $300,000. According to Thomas, he had acquired ownership of the Sombart in 2003, when he purchased a $25,000 van for his father in exchange for the engine. In contrast, Charles

-1-

maintained that the decedent owned the Sombart at the time of his death, meaning that it should have been included in the trust property to be distributed among the siblings.

Acting as trustee, on behalf of the trust, Charles filed suit against Thomas, alleging conversion of the Sombart. A bench trial was held before Judge Julia B. Owdziej, during which the parties presented conflicting evidence regarding the ownership of the Sombart. Ultimately, the court determined that Charles had not established conversion by a preponderance of the evidence. The court concluded that Thomas acquired ownership of the Sombart in 2003 and that he was free to sell it in 2012.

Based on the court's decision in his favor in the conversion case, Thomas then initiated the current proceedings, claiming that the conversion litigation had been "improper." In light of this purportedly improper litigation, Thomas argued that Charles should be removed as trustee and a non-family member should be appointed as trustee. Thomas also asked the court to hold Charles personally liable for the attorney fees incurred on behalf of the trust in bringing the conversion action, to order Charles to return trustee fees, and to order Charles to pay Thomas's attorney fees from the conversion case. Specifically, Thomas asserted that the court should impose a constructive trust against Charles's share of the trust in order to pay Thomas's legal fees and costs.

The current case was also heard and decided by Judge Julia B. Owdziej. Considering whether the conversion litigation was imprudent, the court concluded that Charles had not acted imprudently or in bad faith in pursuing the lawsuit, particularly when Charles retained an attorney and relied on the attorney's recommendations. The court reasoned that the lawsuit had been brought to benefit the trust by seeking recompense for a $300,000 conversion and that, although the conversion litigation proved unsuccessful, this did not render Charles's conduct inappropriate. Ultimately, the trial court determined that Charles should not be removed as trustee, that he should not have to pay the attorney fees arising from the conversion litigation, and that his conduct did not prevent him from receiving any trustee fees. This appeal followed.

## II. STANDARDS OF REVIEW

"In general, an appeal from a probate court decision is on the record, not de novo." *In re DeCoste Estate*, 317 Mich App 339, 345; 894 NW2d 685 (2016). "We review the probate court's factual findings for clear error and its dispositional rulings for an abuse of discretion." *In re Jajuga Estate*, 312 Mich App 706, 711; 881 NW2d 487 (2015). Questions of law, such as statutory interpretation, are reviewed de novo. *Id.*

## III. THE CONVERSION LAWSUIT AS A BREACH OF FIDUCIARY DUTY

On appeal, Thomas first argues that the conversion litigation was unnecessary, that it provided no benefit to the trust, and that Charles's decision to pursue the lawsuit was neither reasonable nor prudent. Instead, Thomas maintains that the litigation was motivated by Charles's self-interest, which conflicted with the interests of the trust beneficiaries, and that in pursuing litigation Charles failed to administer the trust in good faith. In these circumstances, Thomas argues that Charles should be held personally liable for the trust's attorney fees, that he

should be removed as trustee, and that he should be required to repay all trustee fees received after the filing of the lawsuit. We disagree.

The Michigan Trust Code (MTC) applies to this case.[1] See MCL 700.8206(1)(a), (1)(b), (2). Under the MTC, "[a] violation by a trustee of a duty the trustee owes to a trust beneficiary is a breach of trust." MCL 700.7901(1). To remedy a breach of trust, a court may compel the trustee to redress the breach of trust by paying money, the court may reduce or deny a trustee's claim for compensation and expenses, and the court may, if there is a "serious" breach of trust, remove the trustee. MCL 700.7901(1), (2)(c), (g), (h); MCL 700.7904(3); MCL 700.7706(2)(a).

"In general, the duties imposed on the trustee are determined by consideration of the trust, the relevant probate statutes and the relevant case law." *Matter of Green Charitable Trust*, 172 Mich App 298, 312; 431 NW2d 492 (1988). By statute, "[a] trustee is required to administer the trust solely in the interests of the trust beneficiaries," MCL 700.7802(1); and, in doing so, the trustee "shall act as would a prudent person in dealing with the property of another, including following the standards of the Michigan prudent investor rule," MCL 700.7803. "To be prudent includes acting with care, diligence, integrity, fidelity and sound business judgment." *Matter of Green Charitable Trust*, 172 Mich App at 313. "In addition, the courts have imposed on the fiduciary duties of honesty, loyalty, restraint from self-interest and good faith." *Id.* Whether a trustee breached a duty under these standards is measured "at the time of his action" and it "must be tested by the facts of each case." *Hertz v Miklowski*, 326 Mich 697, 700; 40 NW2d 452 (1950).

With regard to the authority to file a lawsuit, the trust documents at issue in this case empowered Charles to "commence or defend litigation with respect to the trust or any property of the trust estate as trustee(s) may deem advisable and to employ such counsel as the trustee(s) shall deem advisable for that purpose." Similarly, by statute, among other duties, a trustee shall take reasonable steps "to locate trust property," MCL 700.7813(1), "to take control of and protect the trust property," MCL 700.7810, and "to enforce claims of the trust," MCL 700.7812. In performing his or her duties, a trustee has the power:

> (x) To prosecute, defend, arbitrate, settle, release, compromise, or agree to indemnify an action, claim, or proceeding in any jurisdiction or under an alternative dispute resolution procedure. The trustee may act under this

---

[1] On appeal, Charles relies on the MTC, which is contained in the Estate and Protected Individuals Code (EPIC) and which became effective on April 1, 2010. See MCL 700.7101; MCL 700.8204; 2009 PA 46. In contrast, without explanation, Thomas cites to former provisions in EPIC, such as MCL 700.7401, as amended by 2005 PA 204. We see no reason why the MTC should not apply in this case, particularly when the trust at issue was executed in January of 2011, and thus we will apply the MTC. However, we note that former EPIC provisions cited by Thomas are substantively very similar to the provisions of the MTC, and we would reach the same conclusions under the former provisions.

subdivision for the trustee's protection in the performance of the trustee's duties. [MCL 700.7817.]

The trustee also has the power:

> (w) To employ an attorney to perform necessary legal services or to advise or assist the trustee in the performance of the trustee's administrative duties, even if the attorney is associated with the trustee, and to act without independent investigation upon the attorney's recommendation. An attorney employed under this subdivision shall receive reasonable compensation for his or her employment. [MCL 700.7817.]

Provided that a trustee participates in a civil action or proceeding in "good faith," whether or not the litigation is successful, "the trustee is entitled to receive from trust property all expenses and disbursements including reasonable attorney fees that the trustee incurs in connection with its participation." MCL 700.7904(2).

In this case, the probate court—specifically, the judge who also presided over the conversion action—determined that Charles did not act imprudently or in bad faith when pursuing the lawsuit. As discussed by the probate court, consistent with his obligation to protect trust property and his authority to litigate a cause of action on behalf of the trust, Charles initiated a lawsuit in an attempt to reclaim $300,000 that he had reason to believe belonged to the trust. If successful, such action would obviously have benefited the trust as a whole, not simply Charles. Moreover, in pursuing this course of action, Charles retained an attorney and proceeded on the attorney's recommendations.

In particular, in terms of the circumstances prompting the conversion lawsuit, Charles personally interacted regularly with the decedent while he served as his father's caregiver leading up to his father's death. According to Charles, the Sombart was his father's favorite engine as well as his most valuable engine. The Sombart was featured on his father's business cards and the decedent spoke about the engine a number of times, stating, for instance, that he had left it at the CPM on permanent loan. In contrast, the decedent never indicated that he had transferred ownership of it to Thomas. Further, the decedent did not have money problems which would have necessitated relinquishing his most prized possession in exchange for a van. The timing of Thomas's claim of ownership was also suspect given that he claimed to have owned the engine since 2003 and yet he waited to sell the engine until shortly after decedent's death. While Thomas claimed ownership since 2003, there was a 2006 letter in which Thomas sought reimbursement from the decedent in the amount of $1,950 for "oilers" for the Sombart, raising concern over why the decedent would pay for oilers for an engine belonging to Thomas. Additionally, when Charles contacted the CPM, the information provided by the CPM did not support Thomas's claim that he owned the Sombart. Moreover, Cynthia concurred in Charles's belief that the Sombart belonged to the decedent. Before trial, Charles also spoke to two friends of the decedent, Chris Hall and Bud Parker, who also stated that the decedent still owned the Sombart at the time of his death.

Notably, before filing suit, Charles retained an attorney, who conducted an investigation, which included speaking with Charles, Cynthia, the president of the CPM, as well as Hall and

Parker. The attorney also contacted Thomas, and Thomas gave her some documents that purported to support his claim of ownership. However, the attorney was personally familiar with the decedent's signature from estate planning documents, and she was not satisfied that the documents were authentic. Under MCL 700.7817(w), Charles was entitled to act on the attorney's recommendations, even without conducting his own independent investigation. Thus, given the advice of counsel, particularly when coupled with Charles's own sound reasons to believe that the Sombart belonged to the trust, Charles acted as would a prudent person in his position and he initiated the conversion litigation.

During the conversion bench trial, Thomas presented evidence, including his own testimony and various documents, to support his claim that he acquired the engine in exchange for a van. Several witnesses, including Jennifer and Nancy as well as friends of Thomas's, testified that Thomas had taken ownership of an "engine" from decedent, though not all of the witnesses could confirm that it was the Sombart in particular. However, we are not persuaded by Thomas's claim that the evidence of his ownership was "overwhelming." Indeed, Charles and Cynthia offered testimony and evidence in opposition to Thomas's claim of ownership; and, at the conversion trial, while ruling in Thomas's favor, Judge Owdziej specified that she did not believe Charles and Cynthia were lying. In short, the bench trial involved conflicting evidence and justiciable questions of fact and law. Nothing about the decision to pursue such a lawsuit strikes us as imprudent or an exercise of bad faith.

Notably, Judge Julia B. Owdziej presided over both the conversion case and Thomas's current claims that the conversion case was improper. Clearly, Judge Owdziej was in the best position to assess the witnesses and to determine whether the conversion lawsuit could be considered imprudent or an act of bad faith by Charles. See *In re Messer Trust*, 457 Mich 371, 387; 579 NW2d 73 (1998) ("The probate court . . . is in the best position to make the determination whether a trustee has breached its duty under the prudent-person rule."). We "give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Duke Estate*, 312 Mich App 574, 581; 887 NW2d 1 (2015). Bearing in mind Judge Owdiziej's unique vantage point, we see nothing erroneous in her conclusion that, by pursuing the lawsuit, Charles acted in good faith and as a reasonably prudent person would in order to protect trust property. Overall, on the facts of this case, we will not, with the benefit of hindsight, declare that Charles pursued the lawsuit imprudently, in bad faith, or with improper self-interest.

In these circumstances, the trial court did not abuse its discretion by refusing to remove Charles as trustee or by refusing to hold Charles liable for the return of trustee fees and the payment of the attorney fees incurred on behalf of the trust in connection with the conversion litigation. Although the conversion litigation proved unsuccessful, because the civil litigation was undertaken in good faith, Charles is not personally liable for the expenses incurred on behalf of the trust. See MCL 700.7904(2); *In re Temple Marital Trust*, 278 Mich App 122, 133-134; 748 NW2d 265 (2008). Moreover, because there has been no breach of trust, the trial court did not abuse its discretion by refusing to remove Charles or order payment of attorney fees and/or repayment of trustee fees. MCL 700.7901(2)(c), (g), (h); MCL 700.7904(3).

IV. CONSTRUCTIVE TRUST

Based on his assertion that the conversion litigation was "improper," Thomas argues that the probate court clearly erred when it denied his request to impose a constructive trust over Charles's share of the trust for Thomas's benefit. According to Thomas, it would be "unjust and unconscionable" for Charles to receive his full one-fifth share of the trust, while Thomas must pay his own attorney fees for the conversion litigation. We disagree.

While Thomas attempts to craft his claim as one for a constructive trust,[2] in actuality he seeks payment of his attorney fees arising from the conversion litigation. However, "Michigan follows the 'American rule' with respect to the payment of attorney fees and costs." *Haliw v City of Sterling Hts*, 471 Mich 700, 707; 691 NW2d 753 (2005). Under the American rule, "each side must bear its own litigation expenses," *Bennett v Weitz*, 220 Mich App 295, 302; 559 NW2d 354 (1996), and attorney fees generally are not recoverable "in the absence of an exception set forth in a statute or court rule expressly authorizing such an award," *Haliw*, 471 Mich at 707. Accordingly, to establish that Charles is liable for his attorney fees, Thomas "must provide a meritorious argument that an exception to the American rule applies in this case." *In re Temple Marital Trust*, 278 Mich App at 139. Thomas has not presented such an argument. Instead, Thomas's claim is nothing but a broad assertion that equity demands payment of his attorney fees from Charles's share of the trust. However, in general, it is improper to award attorney fees based solely on equitable principles. *Id.*; *In re Estate of Adams*, 257 Mich App 230, 237; 667 NW2d 904 (2003). Absent some exception to the American rule, we see no reason why Thomas should not bear his own litigation expenses.

Moreover, we note that, even if we considered Thomas's equitable arguments, Charles would not be liable for Thomas's attorney fees and costs. Thomas's claim of equity depends entirely on the assertion that Charles acted improperly by bringing the conversion lawsuit. But, as we discussed *supra*, Charles did not breach his fiduciary duties as trustee and the conversion litigation was not "improper." Instead, based on the advice of counsel, Charles acted prudently and in good faith by pursuing the conversion litigation on behalf of the trust. Thomas simply has not shown a breach of trust by Charles that would require Charles to compensate Thomas. See MCL 700.7902. Moreover, Thomas litigated the conversion issue for his own benefit, and the fact that he prevailed in the litigation did nothing to enhance, preserve, or protect trust property. See MCL 700.7904(1); *In re Temple Marital Trust*, 278 Mich App at 141. Given that he was pursuing his own self-interests, neither Charles nor the trust can be held liable for his attorney fees; instead, the American rule dictates that Thomas bear his own litigation expenses. Cf. *In re*

---

[2] A constructive trust is an equitable remedy that may be imposed by a court to prevent unjust enrichment. *Kammer Asphalt Paving Co, Inc v E China Tp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993). It is imposed where the owner of property obtained the property through fraud, misrepresentation, concealment, undue influence, and other circumstances where it would be unconscionable for the holder of the legal title of the property to retain and enjoy the property. *Id.* Charles obtained his share of the decedent's estate by virtue of the trust, not through fraud, misrepresentation, concealment, undue influence, or other such circumstances. We fail to see how Charles has been unjustly enriched by his inheritance, and there is no basis on which Thomas should be given a constructive trust over Charles's share of the estate.

*Temple Marital Trust*, 278 Mich App at 141. In sum, nothing about the circumstances in this case warranted an award of attorney fees, and Thomas was not entitled to the creation of a constructive trust to compensate him for his attorney fees.

## V. REMOVAL AND TRUSTEE FEES

Finally, Thomas argues that the trial court erred by declining to remove Charles as trustee and by refusing to order Charles to return his trustee fees. Specifically, Thomas reiterates his arguments regarding the allegedly improper conversion litigation. He also contends (1) that Charles's recordkeeping was inadequate, (2) that Charles failed to notify the beneficiaries in advance as to how he would calculate the trustee fees he intended to pay himself, and (3) that Charles's time logs show excessive hours and charges for services which did not fall within his duties as trustee. According to Thomas, these shortcomings merit the removal of Charles as trustee and/or the return of trustee fees. We conclude that Thomas is not entitled to relief on appeal.

With regard to the removal of Charles as trustee, the probate court did not address this issue at length, but stated that it was not persuaded that Charles's removal as trustee was necessary based on his acts or omissions, particularly when there was little left for the trustee to do given that "the only thing left to be distributed is the money currently being held in escrow, which can't be distributed without a court order." Much of Thomas's argument to the contrary rests on the premise that the conversion litigation was improper; but, this argument is without merit for the reasons discussed *supra*, and the trial court did not abuse its discretion by refusing to remove Charles based on Charles's decision to pursue the conversion litigation.

Aside from the conversion litigation, Thomas attacks the accuracy of Charles's recordkeeping pursuant to MCL 700.7811(1), and contends that inaccuracy and omission of more detailed information warranted Charles's removal. We disagree. In support of his claim of inaccurate recordkeeping, Thomas directs this Court to an accounting provided by Charles on May 15, 2014, which covers the period between July 12, 2012 and February 28, 2014. Thomas contends that the accounting is full of inconsistencies insofar as the first page lists the "total balance of assets remaining" as $417,788.13, while the next 15 pages each contain a different figure for "total balance of assets remaining." However, Charles has explained that the total balance of assets remaining is correctly reported on the first page and that, because there were too many entries for "income and gain" (Schedule A) as well as "expenses, losses, and other disbursements" (Schedule B), the subsequent pages serve as itemizations of Schedule A and Schedule B that should be added together to determine the total gains to the trust as well as the total losses as shown on the first page. When the totals are computed in this manner, the reason for the differing "total balance of assets remaining" is explained. Moreover, to the extent Thomas was confused by the accounting, in terms of the figures or the details of the entries, he had the ability to ask for more information. See MCL 700.7814(1). We see nothing in the accounting which would render the trial court's refusal to remove Charles an abuse of discretion. See MCL 700.7901(1)(g); MCL 700.7706(2)(a). Likewise, insofar as Thomas challenges Charles's log of his hours as trustee or the necessity of some of his services, we see no basis on which to conclude that the trial court abused its discretion by refusing to remove Charles as trustee. MCL 700.7901(1)(g); MCL 700.7706(2)(a).

In terms of trustee fees charged by Charles, the trial court's decision not to order the return of *all* trustee fees (based on the conversion litigation and Charles's recordkeeping) was not an abuse of discretion. To the extent an issue remains regarding the proper amount of trustee fees, we decline to reach this issue at this time because it was not decided by the trial court. See *Heydon v MediaOne*, 275 Mich App 267, 278; 739 NW2d 373 (2007). Specifically, Thomas contends that, though Charles informed the beneficiaries that he would be taking a fee in October of 2012, he did not specify the method of compensation until May of 2014. Thomas argues that, by failing to provide this information in advance, Charles failed to abide by MCL 700.7814(2)(d) and he is not entitled to trustee fees for the period before he notified the beneficiaries of his rate or method of compensation. Additionally, Thomas argues that Charles's log of his time contains activities which did not involve trust administration and that the hours reported by Charles for compensable activities are excessive. Thus, Thomas contends that Charles failed to pay himself "reasonable compensation" that was "fair to the trust beneficiaries." MCL 700.7802(7)(b). Charles disputes these assertions. However, the issue of the proper amount of trustee fees was not addressed by the trial court. Instead, in its written order, the trial court stated:

> The beneficiaries may contest the amount of trustee fees, which will require an evidentiary hearing. The parties are to contact the Court's judicial attorney to set an evidentiary hearing date and obtain a scheduling order.

From the lower court record, it does not appear that such a hearing was held, and thus there is no determination regarding "the amount of trustee fees" for us to review. Given that this issue was not decided by the trial court, we will decline to resolve the issue for the first time on appeal.[3] *Heydon*, 275 Mich App at 278.

Affirmed. Having prevailed in full, Charles may tax costs pursuant to MCR 7.219.

/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Kirsten Frank Kelly

---

[3] Our decision today should not be read to prevent Thomas, or other trust beneficiaries, from seeking an evidentiary hearing as provided in the probate court's order solely with respect to "the amount of trustee fees" under MCL 700.7814(2)(d) and MCL 700.7802(7)(b).