In the

# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 16-1589

JOHN JONES BEY,

*Plaintiff-Appellant,*

*v.*

STATE OF INDIANA, *et al.,*

*Defendants-Appellees.*

—————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-01598-TWP-TAB — **Tanya Walton Pratt**, *Judge.*

—————————

SUBMITTED OCTOBER 27, 2016 — DECIDED FEBRUARY 3, 2017

—————————

Before POSNER, FLAUM, and RIPPLE, *Circuit Judges.*

POSNER, *Circuit Judge.* John Jones Bey, who describes himself as an "Aboriginal Indigenous Moorish-American," filed in the district court what he labeled a "Writ of Mandamus," seeking to enjoin state and county officials from taxing real estate that he owns in Marion County, Indiana. He also asked that the defendant officials be ordered to refund the taxes that he'd paid and to compensate him for their al-

leged wrongs. He asked the district court to award him $11.5 billion. The court refused, and granted the defendants' motions to dismiss, precipitating this appeal.

Bey says he's a "sovereign citizen" and therefore can't lawfully be taxed by Indiana or its subdivisions in the absence of a contract between them and him. (See *El v. AmeriCredit Financial Services, Inc.*, 710 F.3d 748, 750 (7th Cir. 2013), for a description of the beliefs of so-called sovereign citizens of alleged Moorish origin.) We have repeatedly rejected such claims. See *United States v. Jonassen*, 759 F.3d 653, 657 and note 2 (7th Cir. 2014); *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990). We do so in this case as well, and thus affirm the district court.

But we want to take this opportunity to examine the rights asserted, in this as in the other cases we've cited, by persons describing themselves as sovereign citizens by virtue of their alleged Moorish origin. Most of them are African Americans who belong to the Moorish Science Temple of America (MSTA) and claim to be descendants of the Moors of northern Africa, though they are not; Moors are of mixed Berber and Arab descent rather than being African American in the usual sense of being descended from black Africans. The original purpose of MSTA, founded in the 1920s by Noble Drew Ali, whose followers call themselves "Moors" in place of more conventional designations such as "Black," "African American," and "colored," was to claim government "recognition and respect as full citizens rather than the second-class descendants of slaves." Leah Nelson, *'Sovereigns' in Black*, Intelligence Report, Southern Poverty Law

Center (Aug. 24, 2011), www.splcenter.org/fighting-hate/
intelligence-report/2011/'sovereigns'-black (visited Feb. 2,
2016, as were the other websites cited in this opinion). MSTA
focuses on "uplifting" its followers, and encourages them to
vote in U.S. elections so that they can escape "political slav-
ery." Spencer Dew, *Moors Know the Law*, 31 *J. L. & Religion*
70, 72–75 (2016).

The MSTA home office, located in Washington D.C., has
issued a statement clarifying that the organization is neither
"a Sovereign Citizen movement [n]or a Tax Protestor
Movement" and that it was not founded "for its members to
become anarchist or conspiracy theorist[s]." Moorish Science
Temple of America, *Statement on Radical and Subversive Fringe
Groups* (July 15, 2011), http://msta1913.org/Statement_
Radical_Moors.pdf. A MSTA temple in Georgia denounces
sovereign-citizen propaganda as "completely asinine" and
asks that Moors not "adopt[] the ideals of these European
groups who at their core, hate [Moors'] very existence." *Fre-
quently Asked Questions*, Question 1, Moorish Science Temple
of America (Georgia), moorishsciencetemple.org/faqs/.

But clearly, sovereign-citizen ideas appeal to many [self-
described] Moors, who combine those ideas with Ali's teach-
ings in an effort to reclaim and rewrite black history. For ex-
ample, the "Moors Order of the Roundtable" uses eight-
eenth-century treaties with Morocco to distinguish "Free
Moors" from Africans who could be enslaved and teaches
that courts have no jurisdiction over Moors. Nelson, *'Sover-
eigns' in Black, supra*. Other groups claim that their Moorish
nationality gives them the status in the United States of an
indigenous people, although the logic behind this claim is
deeply obscure. See *id.* Renita Bey teaches that Europeans

are latecomers and Moors never granted them citizenship. *Washitaw Nation Comes Under Investigation*, Intelligence Report, Southern Poverty Law Center (June 15, 1999), www. splcenter.org/fighting-hate/intelligence-report/1999/washita w-nation-comes-under-investigation. She teaches her followers that they are "Muurs" from "Muu" who traveled to North America before Africans did, when the world had only one continent. Many sovereign citizen organizations teach that whenever a Moor's name is spelled in capital letters in a government document, the name identifies not the individual but instead his "corporate shell identity," or in other words a "straw man" controlled by the government. See Southern Poverty Law Center, "Sovereign Citizens Movement," www.splcenter.org/fighting-hate/extremist-files/ideol ogy/sovereign-citizens-movement.

Although the Moorish Science Temple does not buy the "sovereign citizen" line, many of its members do. Many of them argue, without any basis in fact, that as a result of eighteenth-century treaties the United States has no jurisdiction over its Moorish inhabitants, who are therefore under no obligation to pay taxes. That is Bey's position, but he does not explain how it entitles him to an $11.5 billion refund from the State of Indiana and/or its subdivisions. Nor is there any basis for his contention that he is not required to pay *any* taxes because being a Moor makes him a sovereign citizen; he may be a Moor but—we emphasize, in the hope of staving off future such frivolous litigation—he is not a sovereign citizen. He is a U.S. citizen and therefore unlike foreign diplomats has no immunity from U.S. law. Indeed his suit is frivolous and was therefore properly dismissed; he was lucky to be spared sanctions for filing such a suit.

Although we have discussed the MSTA at some length, our aim was to introduce readers who may not be familiar with the "sovereign citizen" movement to its principal institutional establishment. We do not mean to task the district judges of this circuit with having to delve into the history of every particular organization involved in every case before them. Often the organization either played no significant role in the events leading up to the case or if it did, nevertheless it was an organization already well known to the court. The unusual feature of this case is that the sovereign-citizen movement and its institutions, such as MSTA, are at once sources of difficult litigation and not well known outside the sovereign-citizen movement.

The judgment of the district court is affirmed.