*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COUNTY OF LIVINGSTON,

        Plaintiff/Counterdefendant-Appellee,

v

MICHAEL EDMUND BAMBAS,

        Defendant/Counterplaintiff-Appellant,

and

BANK OF NEW YORK MELLON, SUSAN
EVERILL, and DTE ENERGY COMPANY,

        Defendants.

UNPUBLISHED
March 25, 2021

No. 352122
Livingston Circuit Court
LC No. 19-030228-CZ

Before: BORRELLO, P.J., and BECKERING and SWARTZLE, JJ.

PER CURIAM.

Defendant/counterplaintiff, Michael Edmund Bambas, appeals by right an order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) and a permanent injunction to plaintiff/counterdefendant, Livingston County. The injunction restrains defendant from using, occupying, or building on a property without relevant permits. On appeal, defendant argues, among other things, that plaintiff lacked standing to bring claims against him, that the trial court lacked subject-matter jurisdiction, that the construction and building codes at issue lack the force of law, that he was not subject to Michigan's court rules, and that the trial court judge improperly dismissed his motion to disqualify herself. We affirm the trial court's order.

## I. FACTUAL BACKGROUND

After a foreclosure sale held in August 2012, the Bank of New York Mellon obtained a sheriff's deed to a property on Sheldon Road in Hamburg Township, which is in Livingston County. Susan Everill testified at her deposition that she purchased the property in 2013. Although

-1-

the title company stated that it sent the deed to Livingston County, the county had not received it, so Everill ultimately recorded a covenant deed in April 2019, after the current litigation had begun.

According to Everill, she met defendant when a neighbor contacted her about someone suspicious being on the property. Sometime later, defendant approached Everill to ask why she was paying the property's taxes and indicated that, because the bank had taken his house, he intended to steal the house on Sheldon Road from the bank. Everill stated that she owned the property and that defendant could not steal it. Defendant then attempted to persuade Everill to let him live on the property for free in exchange for working on it, and Everill declined his offer. Everill stated that defendant repeatedly contacted her, but ultimately, she did not agree to allow defendant to work on the property.

Plaintiff's building official, James Rowell, testified that in 2016 he received a call about work that had been performed on the property's roof without a permit. A stop-work order was issued and posted. In October 2017, Hamburg Township stated in a letter to Everill that it had received a complaint about the property, and the contractor on the property indicated that Everill gave him permission to work on it. The Township informed Everill that it had no record that she owned the property, and it could not permit work until she provided proof of ownership.

According to Rowell, between May and December 2018, siding was removed from the home on Sheldon, the windows were raised, light fixtures were installed in the soffit by the front door, and a deck was under construction, all without the required permits. Another stop-work order was issued. Additionally, Rowell testified that when he went to the property to observe the deck, he noticed lights and wires in the trusses, indicating that unauthorized electrical work was taking place. He ordered the meter turned off on the basis that unpermitted electrical work could be unsafe. Hamburg Township informed the Bank of New York Mellon, which was still the record owner of the property at the time, that someone had attempted to illegally link the house to electric lines with an extension cord, and that the property was also in violation of an antiblight ordinance because it had piles of junk, toilets, and trash.

In January 2019, Rowell met with defendant at the township hall. According to Rowell, defendant indicated that he was performing construction on the property, and had no intent to stop work or obtain a permit. Defendant indicated that because the township had ordered the meter turned off, "he was just going to get a generator and keep on working." He told Rowell to have his inspectors stay off the property. Defendant did not indicate that he was living on the property or had an ownership interest in it. A title search indicated that defendant had no ownership interest, and there was no evidence that he had a lease or rental agreement either.

Another employee of plaintiff testified at a preliminary hearing that he was at the property in February 2019 to post a notice of a temporary restraining order, and he saw no indication that anyone lived at the property. Yet following Rowell's meeting with defendant, power was restored to the home without authorization, and it was again disconnected. In April 2019, Rowell observed that the electrical system was in a dangerous condition because there was tangled wiring and loose electrical outlets that had been left hanging. Rowell also noticed that additional construction had taken place that was not code-compliant, and a furnace, water heater, and sump pump had each been installed without a permit.

-2-

Plaintiff sought an injunction and a temporary restraining order to prohibit defendant, Everill, or the bank from engaging in unpermitted construction on the property. After a hearing at which defendant appeared and argued his position on the matter, the trial court issued a preliminary injunction prohibiting defendant from building on the property without a permit. It also instructed him not to live in the house. Defendant filed counterclaims against plaintiff and a motion to disqualify the trial court judge. Following several hearings, the trial court granted plaintiff summary disposition of defendant's counterclaims and issued a permanent injunction that prohibited defendant, Everill, and the bank from performing construction, connecting electrical power, or using or occupying the building until permits and a certificate of occupancy were obtained. The trial court also denied defendant's motion to disqualify the trial judge.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(10). *Prentis Family Foundation, Inc v Karmanos Cancer Institute*, 266 Mich App 39, 43; 698 NW2d 900 (2005). A party is entitled to summary disposition if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." MCR 2.116(C)(10). This Court reviews de novo questions of law, *Prentis Family Foundation*, 266 Mich App at 43, questions involving the interpretation and application of statutes, *Linden v Citizens Ins Co of America*, 308 Mich App 89, 91; 862 NW2d 438 (2014), and issues of standing, *Groves v Dep't of Corrections*, 295 Mich App 1, 4; 811 NW2d 563 (2011).

Defendant has raised issues on appeal that he did not raise before the trial court. To preserve an issue, a party must raise it before the trial court. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). This Court has the inherent power to review an issue not raised before the trial court. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). However, this Court will generally decline to address unpreserved issues unless "a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case." *Heydon v MediaOne of Southeast Mich, Inc*, 275 Mich App 267, 278; 739 NW2d 373 (2007) (quotation marks and citations omitted). This Court reviews unpreserved issues for plain error affecting a party's substantial rights. *Duray Dev, LLC v Perrin*, 288 Mich App 143, 150; 792 NW2d 749 (2010). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id*.

When reviewing a judicial-disqualification motion, this Court reviews the trial court's findings of fact for an abuse of discretion and reviews de novo the application of the facts to the law. *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 596; 640 NW2d 321 (2001). The court abuses its discretion when its decision falls outside the range of principled outcomes. *Yoost v Caspari*, 295 Mich App 209, 219-220; 813 NW2d 783 (2012).

## III. STANDING AND SUBJECT-MATTER JURISDICTION

As a preliminary matter, we reject defendant's arguments that plaintiff lacked standing and that the trial court lacked subject-matter jurisdiction over the claims plaintiff filed.

A party has standing whenever there is a legal cause of action and the litigant is deemed a proper party to request adjudication of the particular issue. *Lansing Schs Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355, 372; 792 NW2d 686 (2010). For example, a litigant has standing when a statutory scheme implies that the Legislature intended to confer standing on the litigant. *Id.* at 372. When a cause of action is not provided at law, a litigant may have standing "if the litigant has a special injury or right, or substantial interest that will be detrimentally affected in a manner different from the citizenry at large . . . ." *Id.*

As to plaintiff's standing, the Single State Construction Code Act (SSCCA), MCL 125.1501 *et seq.*, provides that "[a] governmental subdivision may by ordinance assume responsibility for administration *and enforcement* of this act within its political boundary." MCL 125.1508b(1) (emphasis added). Such governmental subdivision "shall designate an enforcing agency that shall discharge the responsibilities of the governmental subdivision under [the SSCCA]." MCL 125.1508b(2). Plaintiff is the code-enforcing agency for Hamburg Township, where the property is situated. The Legislature expressly provided plaintiff with standing to enforce the SSCCA as part of the code's legislative scheme. Where construction is being undertaken contrary to a building permit, the SSCCA, or other applicable laws or ordinances, or without a permit, MCL 125.1512(3) authorizes an enforcing agency to provide written notices to the person doing the construction explaining the violations and requiring the person to appear and show cause why construction should not be stopped. If the permit holder or the person doing the construction does not appear, the enforcing agency may issue a written stop-work order. If that order is not obeyed, the enforcing agency may apply to the circuit court for an order enjoining violation of the stop-work order. Thus, MCL 125.1512(3) authorizes plaintiff, the enforcing agency for Hamburg Township, to undertake the enforcement actions taken in this instance, including seeking an injunction. Thus, defendant's argument that plaintiff lacked standing fails, as does defendant's argument that the trial court lacked subject-matter jurisdiction because plaintiff lacked standing.

To the extent defendant argues that the trial court lacked subject-matter jurisdiction over the claims because only the United States Supreme Court has jurisdiction, defendant is incorrect. When Congress provides for exclusive federal-court jurisdiction, the federal claim may not be decided by a state court. See *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 493; 697 NW2d 871 (2005). However, when a plaintiff makes a claim under state law, a state court has jurisdiction. See *A & C Engineering Co v Atherholt*, 355 Mich 677, 681; 95 NW2d 871 (1959). The Michigan Constitution provides that circuit courts have original jurisdiction "in all matters not prohibited by law[.]" Const 1963, art 6, § 13. Plaintiff asserted that the SSCCA was violated when unpermitted construction took place on the property. The SSCCA is a state law. Therefore, state courts had jurisdiction to consider plaintiff's claims.

IV. APPLICATION OF THE SSCCA AND MICHIGAN RESIDENTIAL CODE

Defendant argues that the Michigan Residential Code (MRC), Mich Admin Code R 408.30501 *et seq.*, does not have the force of law and that enforcing it violates separation-of-powers principles. Defendant is incorrect.

Only the Legislature has the duty to make legislation. *Herrick Dist Library v Library of Mich*, 293 Mich App 571, 581; 810 NW2d 110 (2011). However, the Legislature "may delegate

to an administrative body the power to make rules and decide particular cases . . . ." *Id*. at 580 Administrative agencies "frequently exercise judicial, executive, and legislative powers." *Id*. at 581. An agency's authority to adopt rules is determined by the statute that creates the agency and vests it with power. *Id*. at 582. A delegation of legislative authority is constitutional as long as the power delegated to the administrative agency contains reasonably precise standards and satisfies due-process requirements. *Blue Cross & Blue Shield of Mich v Miliken*, 422 Mich 1, 51-52; 367 NW2d 1 (1985).

The SSCCA expressly creates a state construction code commission, MCL 125.1503a(1), and grants the director of the commission the "sole statutory authority to promulgate rules," MCL 125.1503a(4). The director "shall prepare and promulgate the state construction code consisting of rules governing the construction, use, and occupation of buildings and structures . . . ." MCL 125.1504(1). Because the SSCCA expressly delegates power to an administrative agency and precisely defines the area in which the agency may exercise power, the delegation is constitutional. See *Blue Cross & Blue Shield of Mich*, 422 Mich at 51-52.

Defendant's argument that the MRC lacks the force of law is also without merit. An administrative rule that has been properly promulgated under the Administrative Procedures Act, MCL 24.201 *et seq*., has the force of law. See *Danse Corp v Madison Hts*, 466 Mich 175, 181; 644 NW2d 721 (2002). The Bureau of Construction Codes promulgated the MRC under the authority of the SSCCA. Mich Admin Code, R 408.30101(1). The Administrative Procedures Act (APA) contains standards for rulemaking. See MCL 24.231 through MCL 24.266. A rule may only be adopted after notice and a public hearing. MCL 24.241(1). Defendant asserts in his statement of issues presented that his due-process rights were violated by application of the MRC. However, the party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Defendant has not established any factual basis to support that the MRC was not properly promulgated under the APA, or that the promulgation procedure for the MRC violated due-process requirements. Because the MRC was promulgated under statutory authority, it has the force of law.

To the extent defendant asserts that an "all rights reserved" statement on the back of a booklet containing the MRC that was published by the International Code Council prevents plaintiff from enforcing the MRC, we conclude that defendant has abandoned this argument by failing to support it. "A party may not merely announce a position and leave this Court to discover and rationalize the basis for the claim." *Caldwell v Chapman*, 240 Mich App 124, 132-133; 610 NW2d 264 (2000). Defendant has provided no authority to support this assertion, and this Court declines to discover and rationalize a basis for defendant's argument.

Next, defendant argues that he cannot be forced into a contract with plaintiff to purchase a building permit.[1] Defendant's argument is baseless.

---

[1] We note that defendant has identified himself as a "sovereign citizen." Federal courts have "repeatedly rejected" claims that self-identified sovereign citizens are exempt from government

The SSCCA requires that, before constructing a building or structure, an owner, builder, or agent must apply to the appropriate agency for a building permit. MCL 125.1510(1). As already indicated, if a building permit has not been issued to a person performing construction, the enforcing agency shall give written notice of violation of the act and notice to appear and show cause why construction should not be stopped. MCL 125.1512(3). A person shall not continue construction in violation of a stop-work order. *Id*. If a stop-work order is not obeyed, "the enforcing agency may apply to the circuit court for the county in which the premises are located for an order enjoining the violation of the stop construction order." *Id*.

In this case, the property is located in Hamburg Township. Plaintiff is the code-enforcing agency for Hamburg Township. The SSCCA does not require defendant to have a contractual relationship with plaintiff in order for the SSCCA or MRC to apply. The law itself requires defendant to obtain a building permit.

Next, in a series of interconnected arguments, defendant asserts that plaintiff did not prove that Everill owned the property or the manufactured home upon it. According to defendant, because he owned the manufactured home, which he asserts was not part of the real property and is not subject to the MRC, plaintiff conducted an illegal search and illegally disconnected defendant's power. We reject defendant's argument.

In response to a motion for summary disposition, the nonmoving party "may not rest upon the mere allegations or denials of his or her pleading" but instead must "set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4). Once the moving party has identified issues in which there are no disputed issues of material fact, the burden then shifts to the nonmoving party to show that disputed issues exist. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the nonmoving party does not make such a showing, the trial court properly grants summary disposition. *Id*.

In this case, plaintiff argued there were no factual disputes regarding whether Everill owned the property or whether defendant had a possessory interest in the house. Plaintiff supported its motion with Everill's deposition testimony and her covenant deed. Defendant argued that Everill did not actually own the property, but he did not provide specific facts to show that a factual dispute actually existed. To the extent defendant argues that he adversely possessed the property, he provided no facts to support that he had lived on the property for 15 years. See *Beach v Lima Twp*, 283 Mich App 504, 512; 770 NW2d 386 (2009), aff'd 489 Mich 99 (2011) (requiring a person to establish possession for an uninterrupted 15-year period).

To the extent defendant argues that a manufactured home is personal property rather than real property and that the SSCCA does not apply to manufactured homes, he is incorrect. By producing and placing a manufactured home, a person makes an improvement to real property. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515, 518; 573 NW2d 611 (1998). A manufactured home is not fundamentally different from a "traditional home." *Id*. at 517. In this

actions in the absence of a contract between the citizen and the government. See *Bey v Indiana*, 847 F3d 559, 560-561 (CA 7, 2017) (concerning taxation).

case, the manufactured home was situated on the property and had been connected to utilities. Therefore, it was an improvement to the real property and was no different from a traditional home. Additionally, the SSCCA applies to "the construction and installation of premanufactured units . . . ." MCL 125.1504(1). It provides that "[t]he standards for premanufactured housing shall not be less than the standards required for nonpremanufactured housing . . . ." MCL 125.1508a(7). Premanufactured housing includes mobile homes. MCL 125.1502a(aa). The SSCCA expressly applied to the manufactured home on the property.

Because defendant did not establish that he had an interest in the property, he does not have standing to assert that the property was illegally searched. The United States Constitution guarantees the right of persons to be free from unreasonable searches. US Const, Am IV. This guarantee extends to protection from physical inspections of the condition of private property. *Camara v Muni Court of City & Co of San Francisco*, 387 US 523, 530-531; 87 S Ct 1727; 18 L Ed 2d 930 (1967). Administrative searches "are significant intrusions on interests protected by the Fourth Amendment[.]" *Id*. at 534. However, Fourth Amendment rights are personal rights that cannot be asserted vicariously. *Rakas v Illinois*, 439 US 128, 133-134; 99 S Ct 421; 58 L Ed 2d 387 (1978). Because defendant did not establish a genuine issue of material fact regarding whether he had an interest in the property, he does not have standing to assert that the property was illegally searched. See *id*.

Next, defendant argues that the SSCCA did not apply because he performed only minor maintenance on the property. Again, defendant's argument lacks merit. The Michigan Electrical Code applies to "[t]he design, alteration, modification, construction, maintenance, and testing of electrical systems and equipment." Mich Admin Code, R 408.30808(3). A permit is not required for "[r]eplacement of . . . lamp sockets . . . and other minor maintenance and repair work, such as replacing worn cords and tightening connections on a wiring device . . . ." Mich Admin Code, R 408.30818. In this case, according to the building official, when he went to the property, he noticed new lights and wires in the trusses, which indicated that unauthorized electrical work was taking place. The official also observed new wiring in the porch. The official based his decision to turn off the power on the fact that no one had obtained the permit necessary to install new light fixtures. Because the light figures were new rather than replacements, defendant's work did not fall within the definition of minor maintenance and repair. And because defendant's argument that plaintiff illegally disconnected his power is based on his argument that the SSCCA does not apply, that argument also fails.

To the extent defendant argues that he cannot be forced to finance socialism and that allowing plaintiff to fine him violated his due-process rights under the Fourteenth Amendment, his argument does not address the basis of the trial court's decision concerning the injunction. This Court need not consider an issue that was not the basis of the trial court's decision. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). If a party does not address the basis of the trial court's decision, this Court need not even consider granting the party relief. *Id*. This argument concerns the dismissal of defendant's counterclaims, not a reason why the injunction was issued. The trial court dismissed defendant's counterclaims on the basis of

defendant's "flagrant and repeated discovery violations." Defendant has not addressed the basis for dismissal of his counterclaims, and therefore we will not consider this issue.[2]

Defendant also argues that the trial court's order should be void because plaintiff committed a fraud on the court by knowingly misrepresenting material facts. Defendant did not preserve this issue by raising it before the trial court in a motion for relief from judgment. See MCR 2.612(C)(1)(c). Regardless, defendant's argument entirely lacks merit. "[A] fraud on the court occurs when a party has set in motion some unconscionable scheme calculated to interfere with impartial adjudication." *Kiefer v Kiefer*, 212 Mich App 176, 183; 536 NW2d 873 (1995) (quotation marks and citation omitted). The building official's testimony about the property's electrical condition was supported by photographic, date-stamped evidence. And as previously discussed, plaintiff did not misrepresent that the SSCCA and MRC have the force of law; the SSCCA is legislation, and the MRC has the force of law.

## V. COURT-RULE COMPLIANCE

Defendant's argument that the trial court impermissibly prevented him from accessing the property to support his case is entirely baseless. A party may not appeal an error that the party created. *Clohset v No Name Corp*, 302 Mich App 550, 555; 840 NW2d 375 (2013). MCR 2.301(A)(1) provides that discovery is generally available after the commencement of an action "when authorized by these rules, by stipulation, or by court order." During discovery, a party can request to inspect and copy designated documents, MCR 2.310(B)(1)(a)(*i*), or request "to permit entry on land," MCR 2.310(B)(2). Such requests should be served on a party. MCR 2.310(B)(1).

Following dismissal of defendant's counterclaims, defendant filed a motion in which he asserted that he had been denied the ability to engage in discovery because he was prevented from accessing the property. At the hearing on the motion, the trial court informed defendant that if he wanted to discover what was in the house, he could depose Everill. Defendant opined that he

---

[2] Regardless, defendant has not provided factual support for his argument that he was fined, and the trial court's order did not fine defendant. To the extent defendant's assertion may be seen as a challenge to the trial court's dismissal of his counterclaim and award of costs and attorney fees to plaintiff, defendant has failed to properly present this issue for appellate review. Defendant has not identified the issue in his statement of issues, MCR 7.212(C)(5). Ordinarily, no issue will be considered that was not set forth in the statement of questions presented. *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008), aff'd 489 Mich 194 (2011). Although defendant raises the issue in his reply brief, reply briefs may contain only rebuttal argument, and raising an issue in a reply brief is not sufficient to properly present an issue for appeal. MCR 7.212(G); *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Further, the gravamen of defendant's argument is that the trial court should not have addressed his counterclaim because it was based on plaintiff's illegal search of the property and on his not being subject to Michigan's court rules. Both of these issues are addressed and rejected in this opinion.

should not be required to do so.[3] There is no indication that defendant engaged in the discovery procedures mandated by the court rules. Therefore, to the extent defendant was unable to discover what was on the property, defendant created the error by refusing to follow proper discovery procedures.

Defendant argues that the trial court's orders are void because they lack sufficient statements under the court rules. This argument largely lacks record support.

Defendant has provided as exhibits on appeal several orders in which he has circled text and written statements such as "no date," and he indicates that an order he has provided is an "Unsigned Order." MCR 2.602(A)(1) provides that, subject to an exception for default judgments, "all judgments and orders must be in writing, signed by the court and dated with the date they are signed." Additionally, each judgment must state before the judge's signature whether it resolves the last pending claim and closes the case. MCR 2.602(A)(3). A review of the court's orders indicates that they are dated at the top, are signed at the bottom, and state that they are not final orders that do not close the case. The record does not support defendant's assertion.

The order granting a permanent injunction is dated at the bottom, is signed at the bottom, and contains a statement that the order is final and closes the case. The jurisdictional statement in this order does not technically comply with MCR 2.602(A)(3) because the statement appears below the judge's signature rather than before the judge's signature. However, this Court will generally not modify an order of the trial court on the basis of a harmless error. See MCR 2.613(A). The location of the court's jurisdictional statement is harmless, because it did not affect the outcome of defendant's case. See *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 529; 730 NW2d 481 (2007).

## VI. JUDICIAL BIAS

Defendant asserts that the trial court judge improperly dismissed his motion to disqualify herself solely on the basis of court rules rather than on the basis of law. As previously discussed, the court rules have the force of law. Regardless, defendant's argument misstates the trial court's ruling.

Defendant argues that a series of improprieties warranted judicial disqualification for reasons including the following: the trial court improperly declared that the MRC was law; plaintiff

---

[3] Defendant's argument that court rules do not have the force of law and do not apply to him is baseless. The Michigan Supreme Court has the constitutional authority to establish the practice and procedures of courts in the state. Const 1963, art 6, § 5. Generally, court rules have the force of law. *In re Jackson*, 46 Mich App 764, 768; 208 NW2d 526 (1973). Pro se litigants are allowed some leniency in pursuing their claims. See *Haines v Kerner*, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972) (observing that allegations in a pro se complaint are held "to less stringent standards than formal pleadings drafted by lawyers"). However, this leniency is not without limits, and pro se parties must still abide by the court rules. *Bachor v Detroit,* 49 Mich App 507, 512; 212 NW2d 302 (1973) ("Appearance in pro per does not excuse all application of court rules . . . .")

failed to show who owned the house; plaintiff lacked standing; the trial court lacked subject-matter jurisdiction over the case; the trial court singled out defendant and violated discovery rules by preventing him from accessing the house; and the trial court predetermined its rulings.

None of defendant's arguments that the trial court committed legal error merited disqualification. Judicial rulings only support an allegation of bias when the opinion "displays a deep-seated favoritism or antagonism that would make fair judgment impossible . . . ." *Armstrong*, 248 Mich App at 597 (quotation marks and citations omitted). Even if the trial court's legal rulings were incorrect, none of them displayed bias or antagonism toward defendant.

Defendant's argument that the trial court prevented him alone from accessing the house also lacks merit because it lacks record support. Again, the party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *Elston*, 462 Mich at 762. The trial court informed defendant that he could not work on the house or live in the house without a permit. However, the preliminary injunction prevented all of the defendants in this case, including Everill and the bank, from working on the property or living in the house without the relevant permits. There is no support for defendant's argument that he was singled out for different treatment than the other defendants. Nor has defendant identified any facts in the lower court record to establish that the trial court predetermined its rulings. We conclude that defendant's judicial-bias arguments each lack merit.

In summary, none of the many arguments that defendant raises on appeal have merit. We conclude that the trial court did not err by issuing a permanent injunction that prevented defendant from working on or living in the home without necessary permits. There is no basis to overturn the trial court's injunction.

We affirm.

/s/ Stephen L. Borrello
/s/ Jane M. Beckering
/s/ Brock A. Swartzle